WHITMAN v GALIEN TOWNSHIP

Docket No. 287991. Submitted June 2, 2010, at Grand Rapids. Decided
    June 10, 2010, at 9:10 a.m.

The Galien Township Zoning Board of Appeals granted a special-use
    permit allowing the owners of a parcel of property in the town-
    ship's agricultural zoning district to operate a snowmobile, dirt
    bike, and ATV racetrack on that property. Daniel H. Whitman,
    Larry and Mary Piccoli, and others appealed the zoning board's
    decision in the Berrien Circuit Court. The court, John E. Dewane,
    J., affirmed the grant of the special-use permit. Plaintiffs sought
    leave to appeal to the Court of Appeals, which denied leave. In lieu
    of granting leave to appeal, the Supreme Court remanded the case
    to the Court of Appeals for consideration as on leave granted. 485
    Mich 859 (2009).

    The Court of Appeals *held*:

    Plaintiffs contended that the zoning board's decision did not
    comport with the law because the Galien Township Zoning
    Ordinance did not comply with the Michigan Zoning Enabling
    Act (MZEA), MCL 125.3101 *et seq.* A local unit of government
    may only regulate land use through zoning to the limited extent
    authorized by the Legislature. Under MCL 125.3502(1)(a), the
    MZEA allows for special-use permits if the local ordinance
    specifically identifies the special land uses and activities eligible
    for approval. The township zoning ordinance failed to comply
    with this requirement because it identified only general catego-
    ries of uses or activities eligible for special-use status. Because
    the zoning ordinance did not comply with the MZEA, the zoning
    board's decision to grant a special-use permit did not comport
    with the law, and the circuit court erred by affirming the board's
    decision.

    Reversed; special-use permit vacated.

ZONING — MICHIGAN ZONING ENABLING ACT — SPECIAL-USE PERMITS.

    The Michigan Zoning Enabling Act requires that a local zoning
    ordinance specifically identify the land uses and activities that are
    eligible for special-use status (MCL 125.3502[1][a]).

*Olson, Bzdok & Howard, P.C.* (by *Jeffrey L. Jocks* and *James M. Olson*), for Daniel H. Whitman, Larry Piccoli, and Mary Piccoli.

*Desenberg, Colip & Bell, P.C.* (by *Sara A. Bell* and *Louis Desenberg*), for Galien Township and the Galien Township Zoning Board of Appeals.

Before: OWENS, P.J., and O'CONNELL and TALBOT, JJ.

O'CONNELL, J. On September 30, 2008, plaintiffs filed an application for leave to appeal the circuit court's September 9, 2008, order affirming defendant Galien Township Zoning Board of Appeals' grant of a special-use permit to Timothy Richter and Corrine Hoetger (the applicants). The permit was granted pursuant to the Galien Township Zoning Ordinance. Specifically, the circuit court affirmed the zoning board's grant of a special-use permit to allow the operation of a snowmobile, dirt bike, and ATV racetrack during the summer months in the township's agricultural zoning district. This Court denied plaintiffs' application for leave to appeal. *Whitman v Galien Twp*, unpublished order of the Court of Appeals, entered February 20, 2009 (Docket No. 287991). The Supreme Court subsequently remanded the case to this Court for consideration as on leave granted. *Whitman v Galien Twp*, 485 Mich 859 (2009).[1] For the reasons stated in this opinion, we reverse the circuit court's order affirming the zoning board and vacate the special-use permit.

The applicants own a 70-acre parcel of property in Galien Township located at the corner of Mt. Zion Road

---

[1] By stipulation of the parties, George Klingspon, Etta Klingspon, Edward Howard, and Lois Howard were dismissed from the application for leave to appeal in the Michigan Supreme Court. *Whitman v Galien Twp*, 764 NW2d 788 (Mich, 2009). As used in this opinion, the term "plaintiffs" refers to Daniel H. Whitman, Larry Piccoli, and Mary Piccoli.

and US-12, a major highway in the township's agricultural zoning district. Several residential homes are located near the property. The township's agricultural zoning district is governed by a zoning ordinance that provides in pertinent part:

The following uses and regulations shall apply in the Agricultural District.

### SECTION 2.4 A – PERMITTED USES

1. Any use allowed in an "A" Residential District.

2. Farming, including the raising of livestock, raising trees, and harvesting wood, excluding animal confinement or production feeding operations.

3. Sale of products produced mainly on the premises.

4. Mobile homes subject to the provisions of Section 3.1.

### SECTION 2.4 B – USES BY SPECIAL PERMIT AS PROVIDED FOR BY SECTION 3.13

1. Rooming Houses or Boarding Houses, subject to the provisions of Section 3.13[2] (Special Use Permits & Building Standards).

---

[2] Section 3.13 provides, in relevant part:

Uses requiring special permits are those uses of land which are not essentially incompatible with the uses permitted in a zoning district, but possess characteristics or locational qualities which require individual review and restriction in order to avoid incompatibility with the character of the surrounding area, public services and facilities, and adjacent uses of land. Proposed uses will be evaluated according to their compatibility with the nature, extent and density of the surrounding area.

Special permit uses may be permitted only in those zoning districts where they are designated by this Ordinance, and only when specifically approved by the Galien Township Zoning Board in accordance with the provisions of this Ordinance.

Prior to the approval of a Special Use Permit, the Zoning Board shall insure that the standards specified in this Section, as well as standards established elsewhere in this Ordinance shall be satisfied. All uses by special permit shall comply with each of the following standards and requirements:

2. Establishments for the conducting of commercial or industrial activities, subject to approval of the Zoning Board.

3. Animal confinement or production feeding operations.

4. Outdoor display and advertising media as provided by Section 3.17.

(a) The nature, location, and size of the special use shall not change the essential character of the surrounding area, nor disrupt the orderly and proper development of the district as a whole. The use shall not be in conflict with, or discourage the adjacent or neighboring lands or buildings.

(b) The special use shall not diminish the value of the land, buildings or structures in the neighborhood.

(c) The special use shall not increase traffic hazards or cause congestion on the public highways or streets of the area. Adequate access to the parcel shall be furnished.

(d) The water supply and sewage disposal system shall be adequate for the proposed special use by conforming to State and County Health Department requirements, and the special use shall not over-burden any existing services or facilities.

(e) Any agricultural use shall be conducted in conformity with generally accepted agricultural practices and shall not be located within 1000 feet of existing residential structures.

(f) Uses by special permit shall not be significantly more objectionable to nearby properties by reason of traffic, noise, vibrations, dust, fumes, odor, smoke glare, lights, or disposal of waste than the operation of any principal permitted use, nor shall the special use increase hazards from fire or other damages to either the property or adjacent property.

(g) The Zoning Board may require that the premises be permanently screened from adjoining or contiguous properties by a wall, fence, plant screen and/or other approved enclosure when deemed necessary to buffer the surrounding uses from objectionable noise, light, etc., created by the special use.

(h) The special use shall be consistent with the intent and purpose of this Ordinance. The special use shall be compatible with the natural environment and shall not [be] inimical to the public health, safety and general welfare. [Galien Township Zoning Ordinance, art III, § 3.13.]

5. Automobile or travel trailers subject to the provisions of Section 3.11. [Galien Township Zoning Ordinance, art II, § 2.4.]

On or about September 11, 2006, the applicants applied for a special-use permit to construct and operate a snowmobile, dirt bike, and ATV racetrack on their property during the summer months. Specifically, the applicants requested a special-use permit to allow the operation of ATV and dirt bike drag races on dirt tracks and snowmobile races on a pond that the applicants planned to construct on the property.[3] The zoning board granted the permit without making any findings of fact or conclusions of law on the record. Plaintiffs, and several neighboring landowners, appealed the board's decision in the circuit court. Thereafter, because the board had failed to create a proper record for review, the parties stipulated that the board would hold a rehearing.

The zoning board concluded that the proposed racetrack was a permissible commercial use for purposes of a special-use exception in the agricultural district, but found that the applicants failed to submit a proper site plan. After receiving the requested information and holding another hearing, the board found that the applicants' plan satisfied all requirements listed in § 3.13 of the zoning ordinance for granting a special-use permit.

After making findings on the record, the zoning board approved the special-use permit with restrictions.[4] On appeal, the circuit court ruled that the board

---

[3] The applicants referred to snowmobile racing in the summer over a body of water as "watercross."

[4] In particular, the zoning board restricted operation of the racetrack to four Saturdays a year in July, August, September, and October. The board

had properly concluded that it had authority to grant a special-use permit for the racetrack in the agricultural district. The circuit court held that the zoning board had authority under the ordinance to issue a special-use permit because a racetrack qualified as a "commercial use" under § 2.4B(2) of the ordinance. In so holding, the circuit court determined that a zoning board may authorize a special-use permit even if the proposed use is not specifically enumerated in the applicable zoning ordinance. The circuit court held that the board's findings with respect to seven of the eight factors listed in § 3.13 of the zoning ordinance were supported by competent, material, and substantial evidence on the record, but remanded the case back to the zoning board for further findings regarding whether the proposed racetrack would diminish the value of the land, buildings, or structures in the surrounding neighborhood.

After another hearing and an opportunity for public comment, the zoning board found that the racetrack would not diminish the value of neighboring properties. On appeal, the circuit court ruled that the board's findings were supported by competent, material, and substantial evidence and affirmed the board's decision to grant the applicants a special-use permit.

On appeal, plaintiffs contend that the zoning ordinance unlawfully delegates legislative power to the zoning board by allowing the board to issue special-use permits within the agricultural zoning district to any establishment for "commercial or industrial activities." Galien Township Zoning Ordinance, art II, § 2.4B(2). However, the question whether the zoning ordinance

---

restricted the timing of the races to 8:00 a.m. to 10:00 p.m. in July and August and 8:00 a.m. to 8:00 p.m. in September and October. The board allowed the applicants to hold races on Sunday if scheduled Saturday races were rained out. In addition, the board required two weeks' notice of the races and prohibited commercial camping on the property.

unlawfully delegates legislative power to the zoning board was not raised in the circuit court. Thus, plaintiffs failed to preserve this issue for our review. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). "[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citation omitted). Because this Court is not obligated to address issues raised for the first time on appeal, and considering that manifest injustice would not result from our failure to consider this issue, we decline to address it. See *Polkton Charter Twp*, 265 Mich App at 95-96.

Next, plaintiffs claim that the zoning board's decision did not comport with the law because the zoning ordinance does not comply with the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*. We agree. Although this issue is also unpreserved, it involves a question of law, and the facts necessary for its resolution have been presented. In addition, failure to consider this issue would result in manifest injustice because the grant of the special-use permit did not comport with the law. See *Smith*, 269 Mich App at 427. Therefore, we will consider the issue on the merits.

We review de novo a circuit court's decision in an appeal from a zoning board. *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 458; 773 NW2d 730 (2009). When reviewing a zoning board's decision whether to issue an exception to a zoning ordinance, " 'this Court must review the record and . . . [the board's decision] . . . to determine whether

it (1) comports with the law, (2) was the product of proper procedure, (3) was supported by competent, material, and substantial evidence on the record, and (4) was a proper exercise of reasonable discretion.' " *Id.* (citations omitted). A decision by a zoning board that violates a statute or the constitution is not authorized by the law. *Northwestern Nat'l Cas Co v Ins Comm'r*, 231 Mich App 483, 488; 586 NW2d 563 (1998). We review de novo issues involving the construction of statutes and ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

Municipalities have no inherent power to regulate land use through the enactment of zoning legislation; instead, a local unit of government must be specifically authorized by the Legislature to exercise any zoning authority. *Krajenke Buick Sales v Hamtramck City Engineer*, 322 Mich 250, 254; 33 NW2d 781 (1948). The Legislature has granted municipalities the power to zone through the enactment of enabling legislation. *Sun Communities v Leroy Twp*, 241 Mich App 665, 669; 617 NW2d 42 (2000). A local unit of government may regulate land use through zoning only to the limited extent authorized by that legislation. *Krajenke*, 322 Mich at 254-255.

In 2006, the Legislature consolidated the three separate zoning enabling acts for cities and villages, townships, and counties into the MZEA. The MZEA governs the creation and administration of local zoning ordinances and provides in relevant part:

> The legislative body of a local unit of government may provide by ordinance for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or amended or supplemented. Amendments or supplements to the zoning ordinance shall be adopted in the same manner as provided under this act for the adoption of the original ordinance. [MCL 125.3202(1).]

The MZEA also provides that a local zoning ordinance may include provisions for special-use permits within a zoning district as follows:

> The legislative body may provide in a zoning ordinance for special land uses in a zoning district. A special land use shall be subject to the review and approval of the zoning commission, the planning commission, an official charged with administering the zoning ordinance, or the legislative body as required by the zoning ordinance. The zoning ordinance shall specify all of the following:
>
> (a) The special land uses and activities eligible for approval and the body or official responsible for reviewing and granting approval.
>
> (b) The requirements and standards for approving a request for a special land use.
>
> (c) The procedures and supporting materials required for the application, review, and approval of a special land use. [MCL 125.3502(1).]

MCL 125.3504(1) further states that "[i]f the zoning ordinance authorizes the consideration and approval of special land uses . . . or otherwise provides for discretionary decisions, the regulations and standards upon which those decisions are made shall be specified in the zoning ordinance."

In this case, Galien Township apparently enacted its zoning ordinance in 2001 pursuant to the MZEA's predecessor, the Township Zoning Act (TZA), MCL 125.271 *et seq.*, repealed by 2006 PA 110. *Hughes v Almena Twp*, 284 Mich App 50, 59; 771 NW2d 453 (2009); MCL 125.3702(1)(c). The provisions governing the issuance of special-use permits under the TZA were substantively identical to the language used in the MZEA. Compare MCL 125.286b(1) and MCL 125.286d(1) with MCL 125.3502(1) and MCL 125.3504(1). In any event, because this action arose after the effective date of the enactment

of the MZEA, the MZEA governs the resolution of this proceeding. *Hughes*, 284 Mich App at 59, citing MCL 125.3702(2).

The central issue in this case is whether § 2.4B(2) of the zoning ordinance complies with MCL 125.3502(1), which provides that if a zoning ordinance allows for special-use permits, the ordinance "shall specify . . . [t]he special land uses and activities eligible for approval . . . ." Section 2.4B(2) of the zoning ordinance provides that "[e]stablishments for the conducting of commercial or industrial activities" are eligible for special-use permits within the agricultural zoning district, subject to the zoning board's approval and compliance with the requirements set forth in § 3.13 of the ordinance. Plaintiffs contend that the zoning ordinance fails to "specify" the land uses and activities that are eligible for special-use permits because the ordinance generalizes that any establishment for commercial or industrial activities is eligible for special-use status. Thus, we must determine whether the provision of the ordinance conflicts with the MZEA. Resolution of this question necessarily involves the interpretation of statutes and ordinances.

For purposes of interpretation, ordinances and statutes are reviewed in the same manner. *Hughes*, 284 Mich App at 61. "The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature . . . ." *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). When a statute's language is clear, "we assume that the Legislature intended the plainly expressed meaning, and we enforce it as written." *Hughes*, 284 Mich App at 62. However, when a statute's language is ambiguous, "we apply a reasonable construction that best accomplishes the intent of the Legislature." *Id*. Unless other-

wise defined by statute, every word or phrase should be accorded its plain and ordinary meaning. *Risko*, 284 Mich App at 460. Statutes granting power to Michigan townships are construed liberally in the township's favor. *Hughes*, 284 Mich App at 62.

As stated earlier, the language from the MZEA at issue provides that a zoning ordinance "shall specify . . . [t]he special land uses and activities eligible for approval . . . ." MCL 125.3502(1). When used in a statute, the term "shall" is considered to mandate conduct. *Hughes*, 284 Mich App at 62. Because the terms at issue are not defined in the statute, see MCL 125.3102, consultation of dictionary definitions is appropriate. *Risko*, 284 Mich App at 460. *Random House Webster's College Dictionary* (1997) defines "specify" as "to mention or name specifically or definitely; state in detail" and as "to give a specific character to." It defines "specific" as "having a special application, bearing, or reference; explicit or definite" and as "specified, precise, or particular." *Id.* It defines "use" as "an instance or way of using something," as "a way of being used; a purpose for which something is used," as "continued, habitual, or customary employment or practice; custom," and as "the enjoyment of property, as by occupation or employment of it." *Id.* It defines "activity" as "a specific deed, action, function, or sphere of action[.]" *Id.* When these definitions are considered together, the statute can be read to mandate that a zoning ordinance must set forth in explicit, precise, definite, and detailed language both the customary uses and the specific actions and functions that are eligible for special-use permits. The legal definition of "special-use permit" supports this reading of the statute. Black's Law Dictionary (9th ed) defines a "special-use permit" as "[a] zoning board's authorization to use property in a way that is identified as a special exception in a zoning

ordinance." Accordingly, the MZEA's specificity requirement ensures that property uses and activities eligible for special-use status are identified in the language of the zoning ordinance.

The MZEA's requirement that a zoning ordinance specifically identify the land uses and activities that are eligible for special-use status encourages uniformity within a zoning district by placing limits on discretionary zoning decisions. See MCL 125.3201(2) ("Except as otherwise provided under this act, the regulations shall be uniform for each class of land or buildings, dwellings, and structures within a district."). The MZEA's specificity requirement encourages consistency within a zoning district and guards against undesirable "spot zoning," which has been defined as "[a] zoning ordinance or amendment . . . creating a small zone of inconsistent use within a larger zone."[5] *Penning v Owens*, 340 Mich 355, 367; 65 NW2d 831 (1954). By requiring a zoning ordinance to specifically enumerate all land uses and

---

[5] Michigan courts closely scrutinize instances of "spot zoning." See *Raabe v City of Walker*, 383 Mich 165, 168-170, 174-179; 174 NW2d 789 (1970) (invalidating rezoning of a 180-acre parcel within a residential district from agricultural to industrial use when the industrial use was inconsistent with the surrounding area and there was no showing of a valid need for the rezoning for the sake of the public health, safety, and welfare); *Trenton Dev Co v Village of Trenton*, 345 Mich 353, 357-358; 75 NW2d 814 (1956) (invalidating the rezoning of three city blocks to single-family residential when the surrounding area was zoned for multiple dwellings and commercial use and noting that the inconsistency was invalid because there were no purported health, safety, or welfare considerations); cf. *Bruni v Farmington Hills*, 96 Mich App 664; 293 NW2d 609 (1980) (affirming special-use permit for cluster housing within low-density housing district because of unique character of the land); *Essexville v Carrollton Concrete Mix, Inc*, 259 Mich App 257, 277-278; 673 NW2d 815 (2003) (concluding that rezoning of an area from industrial to developmental despite the area's being surrounded by industrial use was not "spot zoning" when rezoning was in accordance with the master land-use plan).

activities that are eligible for a special-use permit, the MZEA guards against an administrative body's ability to haphazardly create small zones of inconsistent use within a larger district.

The MZEA's specificity requirement also operates to prevent an administrative body from engaging in rezoning by approving wholesale changes to the character of a zoning district. Rezoning is exclusively a legislative function. *Sun Communities*, 241 Mich App at 669. The specificity requirement, when coupled with the MZEA's requirement that the zoning ordinance include standards governing a zoning board's discretionary authority, serves to ensure that the ordinance complies with the Michigan Constitution and does not amount to an improper delegation of legislative authority.

Finally, one of the purposes of the MZEA is to provide for and facilitate the orderly development of land-use districts, whether residential, agricultural, industrial, or commercial. "The foundation of traditional zoning has been the division of the municipality into one or more land use districts. The intent is that these districts will be separated, organized, and regulated to achieve legitimate zoning objectives as set forth in the [MZEA] . . . ." Fisher et al., Michigan Zoning, Planning & Land Use (2010), § 1.3, p 5. In order to effectuate this intent, the MZEA provides:

> A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, to ensure that use of the land is situated in appropriate locations and relationships, to limit the inappropriate overcrowding of land and congestion of population, trans-

portation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare. [MCL 125.3201(1).]

By requiring that a zoning ordinance specifically enumerate the land uses and activities that are eligible for special-use status, the MZEA helps to ensure that land-use districts are separated and created in an orderly manner.

Applying the interpretation of the language in the MZEA to the zoning ordinance at issue in this case, we conclude that the zoning ordinance does not comply with the enabling legislation. The zoning ordinance provides that "[e]stablishments for the conducting of commercial or industrial activities" are eligible for special-use status within the agricultural zoning district. Galien Township Zoning Ordinance, art II, § 2.4B(2). The ordinance does not define "commercial" or "industrial." *Random House Webster's College Dictionary* (1997) defines "commercial" as "of, pertaining to, or characteristic of commerce" and as "engaged in, used for, or suitable to commerce or business, [especially] of a public or nonprivate nature[.]" It defines "industrial" as "of or pertaining to a type of the nature of, or resulting from industry" and as "used or appropriate for use in industry[.]" *Id.* It defines "industry" as "any general business activity" and as "trade or manufacture in general[.]" *Id.* Considering these definitions, the language in the zoning ordinance sweeps broadly and makes all actions or functions (i.e., activities) pertaining to commerce, business, trade, manufacture, or industry in general eligible for special-use status within the agricultural zoning district. Section 2.4B(2) does not comply with MCL 125.3502(1) because it does

not specify the special land uses and activities eligible for approval, but identifies only general categories of uses or activities.

Section 3.13 of the ordinance does not change our conclusion. Section 3.13 does not identify which land uses or activities are eligible for special-use permits; instead, it sets forth standards to govern the zoning board's decision whether to grant a special-use permit to an eligible land use or activity. In addition to requiring that an ordinance specifically enumerate the land uses and activities that are eligible for special-use status, the MZEA also requires that a zoning ordinance specifically provide standards and criteria to govern a zoning board's discretionary decision whether to grant a permit for an eligible special use. The MZEA provides in relevant part that a zoning ordinance "shall specify" both "[t]he special land uses and activities eligible for approval and the body or official responsible for reviewing and granting approval" and "[t]he requirements and standards for approving a request for a special land use." MCL 125.3502(1). The fact that § 3.13 is specific and detailed regarding the "requirements and standards for approving a request for a special land use" does not save § 2.4B(2) from noncompliance with the statute for failure to specify the special land uses and activities eligible for approval.

Defendants' reliance on *Reilly v Marion Twp*, 113 Mich App 584; 317 NW2d 693 (1982), is unpersuasive. In *Reilly*, the plaintiffs appealed the zoning board's issuance of a special-use permit authorizing a commercial trucking operation within the township's agricultural-residential zoning district, arguing that the zoning board had acted outside the scope of its authority under the township's zoning ordinance. *Id.* at 585-587. This Court explained that the zoning ordi-

nance did not limit the zoning board's authority to grant special exceptions in cases involving only a use specified in the ordinance. *Id.* at 588. It noted, "The board is empowered under the ordinance to add to the list of special use exceptions those exceptions deemed necessary to protect adjacent properties, the general neighborhood, and its residents and workers . . . ." *Id.* The central issue in *Reilly* involved the interpretation of a zoning ordinance, while the central issue in this case concerns whether the zoning ordinance complies with the MZEA.

Because the zoning ordinance does not comply with the MZEA, the zoning board's decision to grant a special-use permit did not comport with the law, and the circuit court erred by affirming the board's decision.[6]

The circuit court's order affirming the zoning board is reversed. We vacate the special-use permit.

---

[6] Plaintiffs also argue that the circuit court erred by affirming the zoning board's decision to grant the special-use permit because the board's conclusion that the racetrack qualified as a "commercial use" and its application of the factors set forth in § 3.13 of the ordinance were not supported by the evidence. Because we have determined that the zoning ordinance in question does not comply with the MZEA, we need not address this issue.