*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MR C'S P&M, LLC and MR C'S CAR WASH #7, LLC,

Plaintiffs-Appellants,

v

CHARTER TOWNSHIP OF CHESTERFIELD and CHARTER TOWNSHIP OF CHESTERFIELD ZONING BOARD OF APPEALS,

Defendants-Appellees.

UNPUBLISHED
February 06, 2026
12:31 PM

No. 374292
Macomb Circuit Court
LC No. 2024-002571-AA

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

Plaintiffs appealed in the Macomb Circuit Court a decision by defendant, the Charter Township of Chesterfield Zoning Board of Appeals (ZBA), granting CWP West, LLC's (applicant) special land use application (the application) to develop and operate a Mister Car Wash 598 feet from plaintiffs' existing car wash. Plaintiffs now appeal as of right the circuit court's order denying their appeal, finding that plaintiffs were not an aggrieved party to challenge the ZBA's decision. We reverse and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs operate a car wash located at 29600 23 Mile Road, Chesterfield, Michigan. A nearby parcel of land, 598 feet away from plaintiffs' car wash, is in dispute. Applicant submitted the application to Charter Township of Chesterfield's Planning and Zoning Department to develop and operate a Mister Car Wash at 29300 23 Mile Road, also in Chesterfield. The proposed site previously operated as a Big Boy restaurant and was zoned C-3 general commercial. Chesterfield Township Zoning Ordinance § 3.1.17.

The planning commission denied the application and raised concerns that the proposed use was not necessary for the public convenience at the proposed location. Applicant appealed the planning commission's decision to the ZBA, which unanimously approved the application. Plaintiffs opposed the appeal before the ZBA during public comment and in a written

-1-

memorandum. Plaintiffs argued no evidence was presented to show that the community needed another car wash. Plaintiffs further argued that another car wash would oversaturate the market because seven car washes existed within a 2-mile radius of the proposed site and traffic and backups would increase, given the close proximity of the businesses. Additionally, plaintiffs' existing car wash, in which they had invested over half a million dollars, already serviced the surrounding area, and both car washes offered substantially similar services. An additional car wash would cause plaintiffs' business to decline and potentially cause plaintiffs' car wash to close down, and plaintiffs would be forced to sell the property at a discounted price, given that vacant car washes are not suitable for other business models.

Plaintiffs appealed the ZBA's decision in the Macomb Circuit Court, raising the same arguments they presented before the ZBA. In addition, plaintiffs included an affidavit of Vito Catalfio, the owner of Mr. C's Car Wash, which stated that Catalfio invested over half a million dollars in renovations into the car wash, and based on his experience, another car wash was not needed in the community. Defendants moved to strike Catalfio's affidavit by arguing that it was outside of the stipulated record. The circuit court held that plaintiffs were not an aggrieved party able to challenge the ZBA's decision. It reasoned that an aggrieved party must have a legally protected pecuniary interest in the outcome of the case and, although plaintiffs argued that another car wash would cause a potential decline in business, plaintiffs failed to show evidence that this fear was more than a mere possibility. Moreover, the circuit court stated that it was not persuaded that the risk of business competition was sufficiently considered a protected right. Additionally, it reasoned that *Tuscola Area Airport Zoning Bd of Appeals v Mich Aeronautics Comm*, 340 Mich App 760; 987 NW2d 898 (2022), rev'd in part 511 Mich 1024 (2023), was distinguishable from this case because the proposed use involved a physical interference with an existing business rather than possible business competition. Notably, the circuit court did not consider if plaintiffs could establish special damages. This appeal followed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

Generally, "we review de novo a circuit court's decision in an appeal from a ZBA decision because the interpretation of the pertinent law and its application to the facts at hand present questions of law." *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009) (citations omitted). "De novo review means that we review the legal issue independently and without deference to the trial court." *Wilcox v Wheatley*, 342 Mich App 551, 556; 995 NW2d 594 (2022).

Additionally, "[w]hether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). "This includes the circuit court's decision regarding whether its appellate jurisdiction has been properly invoked." *Id*. Furthermore, the term "standing" usually refers to a plaintiff's right to initially "invoke the power of a trial court to adjudicate a claimed injury." *Olsen v Chikaming Twp*, 325 Mich App 170, 180; 924 NW2d 889 (2018), overruled in part on other grounds by *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561; 983 NW2d 798 (2022). But here, plaintiffs seek to invoke the circuit court's appellate jurisdiction to appeal the ZBA's decision granting the application. Thus, "a party seeking relief from a decision of a ZBA is not required to demonstrate

'standing' but instead must demonstrate to the circuit court acting in an appellate context that he or she is an 'aggrieved party.' " *Id.*

## B. DISCUSSION

The circuit court erred by holding that plaintiffs were not an aggrieved party able to appeal the ZBA's decision granting applicant's special land use application. Plaintiffs claimed a legally protected pecuniary interest that would likely be affected by applicant's car wash operating in close proximity to plaintiffs' existing car wash.

### 1. THE ZBA PROCESS GENERALLY

"Municipalities have no inherent power to regulate land use through the enactment of zoning legislation; instead, a local unit of government must be specifically authorized by the Legislature to exercise any zoning authority." *Whitman v Galien Twp*, 288 Mich App 672, 679; 808 NW2d 9 (2010). "The Legislature has granted municipalities the power to zone through the enactment of enabling legislation." *Id.* Specifically, the Legislature enacted the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, which "consolidated three zoning statutes for cities and villages, for townships, and for counties." *Saugatuck Dunes Coastal Alliance*, 509 Mich at 577.

The MZEA "authorizes localities to provide for special land uses within a zoning district." *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 516; 838 NW2d 915 (2013). Specifically, "[a] local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens . . . ." MCL 125.3201(1). "A request for approval of a land use or activity shall be approved if the request is in compliance with the standards stated in the zoning ordinance, the conditions imposed under the zoning ordinance, other applicable ordinances, and state and federal statutes." MCL 125.3504(3).

Here, applicant filed a special land use application with the Charter Township of Chesterfield's Planning and Zoning Department to develop a Mister Car Wash at 29300 23 Mile Road in Chesterfield, as required under Chesterfield Township Zoning Ordinance § 3.1.17(C)(14). The planning commission denied the application. Applicant then appealed the planning commission's decision to the ZBA, which unanimously approved the application. This was permissible, because under MCL 125.3604(1) a person aggrieved by a planning commission's decision may appeal to the ZBA. Plaintiffs then appealed the ZBA's decision granting the application to the Macomb Circuit Court.

"The MZEA also provides for judicial review of a local unit of government's zoning decisions." *Olsen*, 325 Mich App at 179. Specifically, "A party aggrieved by the decision [of the zoning board of appeals] may appeal to the circuit court for the county in which the property is located as provided under [MCL 125.3606]." *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 457; 957 NW2d 47 (2020), quoting MCL 125.3605 (alterations in original). "The circuit court is then obliged to ensure that the decision at issue comports with applicable law; follows from proper procedure; is supported by competent, material, and substantial evidence on the record; and constitutes a reasonable exercise of discretion." *Id.*

## 2. PLAINTIFF IS AN AGGRIEVED PARTY

Thus, to challenge the ZBA's decision in the circuit court, plaintiffs had to show that they were an aggrieved party of the ZBA's decision granting applicant's special land use application.

In *Saugatuck Dunes Coastal Alliance*, our Supreme Court set forth three requirements for determining whether a party is considered an aggrieved party under MCL 125.3605 and MCL 125.3606 to challenge a ZBA decision, which consist of the following:

> First, the appellant must have participated in the challenged proceedings by taking a position on the contested decision, such as through a letter or oral public comment.

> Second, the appellant must claim some legally protected interest or protected personal, pecuniary, or property right that is likely to be affected by the challenged decision.

> Third, the appellant must provide some evidence of special damages arising from the challenged decision in the form of an actual or likely injury to or burden on their asserted interest or right that is different in kind or more significant in degree than the effects on others in the local community.  [*Saugatuck Dunes Coastal Alliance*, 509 Mich at 595.]

Applying the *Saugatuck* criteria to this case, plaintiffs were an aggrieved party of the ZBA's decision, which granted applicant's special land use application to operate a Mister Car Wash in close proximity to plaintiffs' existing car wash, thereby allowing plaintiffs to appeal the decision in the circuit court.  As to the first requirement, both parties agree that plaintiffs participated in the challenged proceedings by opposing the application during public comment and by submitting their objections to the ZBA in a written memorandum.

However, as to the second requirement, the circuit court erred by holding that plaintiffs failed to claim some legally protected pecuniary right that was likely to be affected by the ZBA's decision.  In their memorandum to the ZBA and again on appeal to the circuit court, plaintiffs detailed their substantial investments made in developing and operating their existing car wash, which exceeded half a million dollars.  They further alleged that allowing another car wash, offering substantially similar services, to open 598 feet away would saturate the market, cause a decrease in business, and likely close down plaintiffs' business.  Should their business close, it would be sold at a reduced market price, as a vacant car wash is less marketable given its incompatible infrastructure for other businesses.  These concerns establish plaintiffs' legally protected pecuniary interest that was likely to be affected by the ZBA's decision to approve applicant's special land use application.  After all, the development and operation of a substantially similar car wash 598 feet away from plaintiffs' existing car wash would likely impact plaintiffs' profitability and cause them pecuniary loss.  Moreover, because two car washes are involved, plaintiffs alleged pecuniary loss is particularized to them and differs from general economic concerns because plaintiffs' *specific business* will be affected by another car wash opening nearby.

Contrarily, the circuit court held that plaintiffs could not establish a legally protected pecuniary interest because plaintiffs' claims of financial hardships resulting from applicant's car wash operating nearby amount to mere speculation. Specifically, the circuit court cited the Supreme Court's holding in *Saugatuck*, which held that to be an aggrieved party "one must have some interest of a pecuniary nature in the outcome of the case, and not a *mere possibility* arising from some unknown and future contingency." *Saugatuck Dunes Coastal Alliance,* 509 Mich at 592 (quotation marks and citations omitted; emphasis added). However, this holding does not require plaintiffs to prove that their existing pecuniary interest *will be* affected by the ZBA's decision to qualify as an aggrieved party. Later in its opinion, the Supreme Court articulated the second requirement for aggrieved-party status: "the appellant must claim some legally protected interest or protected personal, pecuniary, or property right that is *likely to be affected* by the challenged decision." *Id*. at 595 (emphasis added). Thus, the Supreme Court's holding is properly read as requiring an existing pecuniary interest in the outcome of the case, rather than a *mere possibility* of an existing pecuniary interest. Requiring plaintiffs to demonstrate an actual pecuniary loss with absolute certainty would be impossible in most cases. Therefore, the circuit court erred by holding that plaintiffs could not establish a legally protected pecuniary interest to challenge the ZBA's decision.

Additionally, our Supreme Court held that potential pecuniary loss resulted in aggrieved-party status, and such pecuniary loss was not required to be proven with absolute certainty. For example, in *Tuscola Area Airport Zoning Bd of Appeals*, the Tuscola Area Airport Authority (airport) appealed to the Ingham Circuit Court a decision granting variances to a company to construct wind turbines near the airport. The circuit court held that the airport was not an aggrieved party under the Tall Structure Act, MCL 259.481 *et seq.*, and MCR 7.103(A). *Tuscola Area Airport Zoning Bd of Appeals*, 340 Mich App at 767. On appeal, the airport alleged, in part, that the wind turbines would cause a loss in revenue due to fewer pilots using the airport. Moreover, the airport established that the average airport visitors spent $262 and "that the loss of even one visit would establish a pecuniary interest." *Id*. at 779. We disagreed and held that the number of visitors to an airport varies annually given "weather conditions, the economy, the personal finances of individual pilots, and any number of other factors . . . ." *Id*. Thus, "[a]bsent some way to correlate the loss of revenue to the installation of turbines, this assertion of harm is nothing more than speculation." *Id*. However, the Supreme Court reversed our holding and reasoned that the airport "alleged (and provided evidence in support of its allegation) a concrete and particularized injury—that the turbines will result in a pecuniary loss to the airport." *Tuscola Area Airport Auth v Mich Aeronautics Comm*, 511 Mich 1024 (2023). The circuit court emphasized that *Tuscola Area Airport Zoning Bd of Appeals* involved a physical interference with the appellant's existing business. While true, the manner in which plaintiffs' legally protected pecuniary interest is affected is irrelevant so long as the ZBA's decision would likely cause plaintiffs pecuniary loss.

Read together, *Saugatuck* and *Tuscola* establish that a party must claim, and provide some supporting evidence, that its legally protected pecuniary right is *likely* to be affected by a ZBA decision. Plaintiffs provided information establishing that they will likely suffer pecuniary loss if

the ZBA's decision is not reversed.[1]  Therefore, the circuit court erred in finding that plaintiffs were not an aggrieved party able to challenge the ZBA's decision.

Plaintiffs adequately claimed a legally protected pecuniary interest that would likely be affected by the ZBA's decision, and the circuit court erred by dismissing plaintiffs' appeal.  We reverse and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young

---

[1] Defendants incorrectly argue that Catalfio's affidavit should not be considered in determining whether plaintiffs were an aggrieved party of the ZBA's decision because it was presented to the circuit court after the stipulated record on appeal was filed.  However, as plaintiffs correctly note, whether they were aggrieved by the ZBA's decision did not become an issue until they appealed that decision to the circuit court.  That appeal happened after the ZBA proceedings, making submission of the affidavit to the ZBA premature.  Accordingly, the affidavit was properly presented for the first time in the circuit court, as plaintiffs were not required to establish aggrieved-party status before the ZBA.  As mentioned above, "a party seeking relief from a decision of a ZBA is not required to demonstrate 'standing' but instead must demonstrate to the circuit court acting in an appellate context that he or she is an 'aggrieved party.' "  *Olsen*, 325 Mich App at 180.  Thus, the affidavit should be considered.

Moreover, the trial court did not rely on the affidavit in dismissing plaintiffs' appeal.  The trial court held that "[e]ven if the Court were to consider Vito Catalfio's affidavit regarding a decline in business," business competition was inadequate to render plaintiffs with aggrieved-party status.  In any event, the affidavit does not contain new information.  Rather, it merely restates facts and concerns plaintiffs previously presented to the ZBA.  Thus, the circuit court already had this information before it as part of the stipulated record.  As discussed, caselaw establishes that plaintiffs' arguments presented to the ZBA were sufficient to demonstrate that they were an aggrieved party.  Therefore, plaintiffs qualify as an aggrieved party regardless of whether the affidavit is considered.