# STATE OF MICHIGAN

# COURT OF APPEALS

---

MARTHA CARES OLSEN, FRITZ OLSEN, ROBERT E. LEHRER, SHERIBEL F. ROTHENBERG, STEPHEN CASEY, KATHLEEN CASEY, ERNEST LEWIS MACVICAR III, JANICE MACVICAR, RONALD DEVLAM, and MICHELLE DEVLAM,

    Appellees,

v

JUDE AND REED, LLC,

    Appellant.

FOR PUBLICATION
July 3, 2018
9:05 a.m.

No. 337724
Berrien Circuit Court
LC No. 16-000059-AA

---

MARTHA CARES OLSEN, FRITZ OLSEN, ROBERT E. LEHRER, SHERIBEL F. ROTHENBERG, ZWIER FAMILY TRUST, STEPHEN CASEY, KATHLEEN CASEY, ERNEST LEWIS MACVICAR III, JANICE MACVICAR,

    Appellees,

v

JUDE AND REED, LLC,

    Appellant.

No. 337726
Berrien Circuit Court
LC No. 16-000059-AA

---

Before: MURRAY, C.J., and HOEKSTRA and GADOLA, JJ.

GADOLA, J.

In Docket No. 337724, appellant appeals by leave granted the order of the circuit court reversing the determination of the Chikaming Township Zoning Board of Appeals (ZBA)

-1-

granting appellant's application for a nonuse zoning variance. In Docket No. 337726, appellant appeals as of right the same order of the circuit court. In both appeals, appellant challenges whether appellees[1] are aggrieved parties who may contest the final order of the ZBA. We reverse and remand.

## I. FACTS AND BACKGROUND

In 1957, Preston and Doris Sweet platted a 17-lot subdivision near Lake Michigan called the Merriweather Shores subdivision. In the following years, the Sweets conveyed some of the lots to buyers, while retaining other lots. This case involves Lot 6 of the subdivision. Lot 6 has 118 feet of frontage along Huntington Drive, is 82 feet deep, and has a total area of 9,676 square feet.

The subdivision is located in Chikaming Township. At the time Merriweather Shores was platted, the township did not have a zoning ordinance. The township thereafter enacted a zoning ordinance in 1964, and in 1981 enacted a new zoning ordinance. The parties agree that at some point after enactment of the 1981 ordinance, Lot 6 was rendered nonconforming because the ordinance required all lots to have a minimum area of 20,000 square feet for buildability. Regarding nonconforming lots, § 4.02 of the 1981 ordinance provided:

> If two or more lots or combination of lots and portions of lots with continuous frontage in single ownership are of record at the time of passage or amendment of this ordinance, and if all or part of the lots do not meet the requirements established for lot width and area, the lands involved shall be considered to be an undivided parcel for the purposes of this ordinance and no portion of said parcel shall be used or sold in a manner which diminishes compliance with lot width and area requirements established by this ordinance, nor shall any division of any parcel be made which creates a lot with width or area less than the requirements stated in this ordinance.

In 1982, Doris Sweet, as survivor of Preston Sweet, conveyed the remaining lots to herself and to David Sweet as joint tenants with rights of survivorship. The parties do not dispute that in 1989, David Sweet, as survivor of Doris Sweet, conveyed Lots 8 through 10 to unrelated parties but maintained ownership of Lots 6 and 7. In 1996, a prospective buyer, David Zilke, was interested in purchasing Lots 6 and 7 from David Sweet. Combined, Lots 6 and 7 had an area of 19,352 square feet, and Zilke requested a variance from the 20,000 square foot minimum for buildability, and from the rear and side setback requirements. The ZBA denied the variance application, and Zilke declined to purchase the property.

---

[1] In Docket No. 337724, this Court granted the motion of appellees Ronald DeVlam and Michelle DeVlam to be substituted as successors in interest for the Zwier Family Trust. *Olsen v Twp of Chickaming*, unpublished order of the Court of Appeals, entered May 11, 2017 (Docket No. 337724).

In 1998, the township adopted a new zoning ordinance, which remained in effect at the times relevant to this case. In 2011, the Berrien County Treasurer foreclosed on David Sweet's interest in Lot 7 for nonpayment of property taxes, and T&W Holdings, LLC purchased Lot 7 at a tax foreclosure sale. In 2013, the Berrien County Treasurer foreclosed on David Sweet's interest in Lot 6 for nonpayment of property taxes, and appellant purchased Lot 6 at a tax foreclosure sale.

Seeking to build a residential cottage on Lot 6, appellant filed an application with Chickaming Township for a nonuse variance under § 4.02(C) of the zoning ordinance. Appellant requested a nonuse dimensional variance under § 14.02, which requires all R-1 lots to have a minimum lot area of 20,000 square feet and a rear setback of 50 feet. Lot 6 had square footage of 9,676, and would require a rear setback of 30 feet. Appellant argued that as a nonconforming lot, Lot 6 was eligible for a variance pursuant to § 4.02 and § 4.06 of the zoning ordinance and that without the variance, Lot 6 would be rendered unusable.

Before the ZBA held a hearing to address appellant's application, the township sent notice to property owners who owned property within a 300-foot radius of Lot 6.[2] At the ZBA hearing, some of the neighboring property owners appeared by counsel to argue against the variance. Following public comment and extensive discussion by the ZBA members, the ZBA voted to approve the variance request.

Appellees appealed the ZBA's decision to the circuit court, and the circuit court permitted appellant to intervene in the circuit court action. The ZBA moved to dismiss the circuit court action for lack of subject-matter jurisdiction, arguing that appellees lacked standing to challenge the ZBA's decision to grant the variance. Appellant joined the ZBA in the motion. Appellant and the ZBA argued that only an "aggrieved" party could appeal the ZBA's decision and that appellees were not aggrieved because they could not show that they suffered special damages. At the conclusion of the hearing on the motion, the trial court found that appellees had standing to appeal the ZBA decision to the circuit court, explaining:

> I find in this circumstance that the Legislature has a scheme that implies it intended to confer standing on these litigants. The Zoning Enabling Act provides, in section 3103, that notice shall be given to persons—all persons who have real property that is assessed within 300 feet of the property that is [the] subject of the request, and it seems to me that in the context of the [appellees] challenging the actions of the Zoning Board of Appeals, I—I must find that this notice requirement implies that the Legislature intended to confer standing to those individuals so as to qualify as aggrieved part[ies] for the purposes of the appeal under 3606. . . . [W]ere this not true . . . only an applicant who's denied a variance would have standing to appeal save . . . they can show themselves to otherwise have a special interest, the door would be open to those individuals. But, again, is that only individuals within the 300 feet, or is that any ole person that can show

---

[2] MCL 125.3103 requires notice of the public hearing to persons to whom property is assessed within 300 feet of the subject property.

some other—some other interest . . . . [M]y interpretation is that the Legislature wouldn't intend that result to only confer the—the appeal status, particularly as I said, within the context of the Statute indicating that they must give notice to these folks within 300 feet. And also specifically indicating what that notice has to have when and where written comments will be received concerning the request.

The circuit court also noted that the ordinance generally required a 50-foot setback for a septic system, and the ZBA provided appellant with a 20-foot variance for the septic system. The circuit court noted, "that seems to me that arguably there may be a special interest with respect to that, particularly with the contiguous properties." The circuit court denied the motion to dismiss, concluding that "given the notice Statute, it seems that . . . [t]he Statute implies an intent to confer standing on [appellees]."

After further proceedings, the circuit court reversed the ZBA's decision. The circuit court held that the ZBA did not have authority to grant the variance because appellant did not satisfy § 23.04 of the township's zoning ordinance, which permits the ZBA to grant a variance under specific conditions. Specifically, the circuit court found that any hardship was self-created, explaining:

In the instant case, this Court finds that the hardship was self-created. Although [appellant and the ZBA] insist that "it was the passage of time and application of the Zoning Ordinance to the existing lots of record that created the hardship," the analysis in [*Johnson v Robinson Twp*, 420 Mich 115; 359 NW2d 526 (1984)] does not support that argument. When the 1964 Zoning Ordinance went into effect, Lot 6 was under common ownership and held continuous frontage with Lots 7, 8, 9 and 10 and thus, the lots were deemed as one lot for purposes of the Zoning Ordinance. Accordingly, Lot 6 was not a standalone lot and could not be considered a grandfathered nonconforming lot of record. The Sweets, the prior owners, then violated the Zoning Ordinance when they split Lot 6 and Lot 7 from the remaining lots and as a result, Lot 6 and Lot 7 could not be developed as standalone building sites. Like the plaintiff in *Johnson*, the zoning ordinance preceded the division of the property . . . . Moreover, it is worth noting that the Owner was a sophisticated buyer who was aware of the limitation on Lot 6 when it purchased the property for $6,054.00. The property remains available for use in conjunction with an adjacent parcel. Therefore, the Zoning Board of Appeals erred when they granted the variance because the practical difficulty was one that was produced by the Sweets, the Owner's predecessor in title, and accordingly, Section 23.04.D. was not satisfied.

Appellant claimed an appeal to this Court (Docket No. 337726), challenging the circuit court's determination that appellees were aggrieved parties able to appeal the decision of the ZBA to the circuit court. Appellant also sought leave to appeal the same order of the circuit

-4-

court (Docket No. 337724), raising additional challenges to the circuit court's ruling. This Court granted appellant's application for leave to appeal and consolidated the appeals.[3]

## II. ANALYSIS

Appellant first contends that appellees lacked standing to challenge the decision of the ZBA before the circuit court because they are not "aggrieved parties" within the meaning of the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*. We agree that appellees are not aggrieved parties within the meaning of the MZEA, and therefore were not able to invoke judicial review by the circuit court of the ZBA's decision granting appellant a nonuse variance.

Municipalities have no inherent power to regulate land use through zoning. *Whitman v Galien Twp*, 288 Mich App 672, 679; 808 NW2d 9 (2010). Our state's Legislature, however, has granted this authority to municipalities through enabling legislation. *Sun Communities v Leroy Twp*, 241 Mich App 665, 669; 617 NW2d 42 (2000). In 2006, our Legislature consolidated three previous zoning enabling acts for cities and villages, townships, and counties into the MZEA. *Whitman*, 288 Mich App at 679. The MZEA grants local units of government authority to regulate land development and use through zoning. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 515; 838 NW2d 915 (2013).

The MZEA also provides for judicial review of a local unit of government's zoning decisions. Specifically, § 605 of the MZEA, MCL 125.3605, provides that a decision of a zoning board of appeals is final, subject to appellate review by the circuit court. The circuit court is authorized under the MZEA to review the decision of a ZBA to determine whether the decision of the ZBA (a) complied with the constitution and laws of this state, (b) was based upon proper procedure, (c) was supported by competent, material, and substantial evidence, and (d) represented the ZBA's reasonable exercise of discretion. MCL 125.3606(1); *Edward C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011).

Our review of a circuit court's decision in an appeal from a decision of a zoning board of appeals is de novo to determine whether the circuit court "applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [ZBA's] factual findings." *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009), quoting *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1997). In addition, we review de novo issues involving the construction of statutes and ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

We also review de novo the legal question whether a party has standing. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). We note, however, that the term "standing" generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury. *Federated Ins Co v Oakland Co Road Comm*, 475 Mich 286, 290;

---

[3] *Olsen v Twp of Chikaming*, unpublished order of the Court of Appeals, entered July 14, 2017 (Docket No. 337724); *Olsen v Twp of Chikaming*, unpublished order of the Court of Appeals, entered July 14, 2017 (Docket No. 337726).

715 NW2d 846 (2006). In this case, appellees did not seek initially to invoke the power of the circuit court, but rather sought appellate review by the circuit court of the decision of the ZBA under § 605 of the MZEA. Section 605 of the MZEA provides:

> The decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court for the county in which the property is located as provided under section 606. [MCL 125.3605.]

Thus, under the MZEA, a party seeking relief from a decision of a ZBA is not required to demonstrate "standing" but instead must demonstrate to the circuit court sitting in an appellate context that they are an "aggrieved" party. MCL 125.3605.

In discussing the similar provision of MCR 7.203(A), which provides that this Court has jurisdiction of an appeal of right filed by an "aggrieved party," our Supreme Court observed the difference between standing and the comparable interest in an appellate context of being an "aggrieved party," stating that "[t]o be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co*, 475 Mich at 291 (citations omitted). "An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case." *Id*. at 291-292.

Thus, the question in this case is more properly framed as not whether appellees had "standing," but specifically whether appellees were "parties aggrieved by the decision" of the ZBA within the meaning of the MZEA, and thereby empowered by the MZEA to invoke appellate review of the ZBA's decision by the circuit court. To answer that inquiry, we look first to the provisions of the MZEA. Because the MZEA does not define the term "party aggrieved," we must engage in statutory interpretation, adhering to the well-settled rules governing such an inquiry. In doing so, our "primary goal is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning." *Id*. "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Id*.

The relevant statutory language provides that a "party aggrieved by the decision [of the ZBA] may appeal to the circuit court . . . ." MCL 125.3605. We do not assume that language chosen by the Legislature was inadvertent, *Bush v Shabahang*, 484 Mich 156, 169; 772 NW2d 272 (2009), and when interpreting statutory language that previously has been subject to judicial interpretation,[4] we presume that the Legislature used the words in the sense in which they

---

[4] We emphasize that we are not referring to the doctrine of "legislative acquiescence," which is highly disfavored in Michigan as an indicator of legislative intent. See *Ray v Swager*, 501 Mich 52, 78 n 63; 903 NW2d 366 (2017), citing *Donajkowski v Alpena Power Co*, 460 Mich 243, 258;

previously have been interpreted.  *People v Wright*, 432 Mich 84, 92; 437 NW2d 603 (1989); *People v Powell*, 280 Mich 669, 703; 274 NW 372 (1937).

In other contexts, this Court has defined the term "aggrieved party" as "one whose legal right is invaded by an action, or whose pecuniary interest is directly or adversely affected by a judgment or order." *Dep't of Consumer & Indus Servs v Shah*, 236 Mich App 381, 385; 600 NW2d 406 (1999) (citation omitted).  In the context of zoning, but before enactment of the MZEA, this Court interpreted and applied the phrase "aggrieved party" in cases arising under former zoning enabling acts.  In doing so, this Court consistently concluded that to be a "party aggrieved" by a zoning decision, the party must have "suffered some special damages not common to other property owners similarly situated." *Unger v Forest Home Twp*, 65 Mich App 614, 617; 237 NW2d 582 (1975), citing *Joseph v Grand Blanc Twp*, 5 Mich App 566, 571; 147 NW2d 458 (1967).  Generally, a neighboring landowner alleging increased traffic volume, loss of aesthetic value, or general economic loss has not sufficiently alleged special damages to become an aggrieved party, *Village of Franklin v Southfield*, 101 Mich App 554, 557; 300 NW2d 634 (1981), because those generalized concerns are not sufficient to demonstrate harm different from that suffered by people in the community generally.

In *Unger*, the township granted a building permit for the construction of a condominium. The appellant appealed the decision to the circuit court, and the circuit court dismissed the appeal finding that the appellant was not an "aggrieved party."  This Court affirmed, explaining that the appellant had not alleged facts sufficient to show special damages, alleging only the possibility of increased traffic on the lake and an effect on property values.  *Unger*, 65 Mich App at 618. This Court concluded:

> In order to have any status in court to challenge the actions of a zoning board of appeals, a party must be "aggrieved."  The plaintiff must allege and prove that he has suffered some special damages not common to other property owners similarly situated. . . .
>
> It has been held that the mere increase in traffic in the area is not enough to cause special damages.  Nor is proof of general economic and aesthetic losses sufficient to show special damages.  [*Id*. at 617.]

In *Western Mich Univ Bd of Trustees v Brink*, 81 Mich App 99; 265 NW2d 56 (1978), the Kalamazoo Zoning Board of Appeals granted the defendant's petition to expand a nonconforming use and for variances to accommodate the expansion.  The plaintiff university owned property within 300 feet of the defendant, and sought in the circuit court to set aside the

---

596 NW2d 574 (1999).  Under the doctrine of legislative acquiescence, a court assumes that the Legislature tacitly approves a judicial interpretation if the Legislature does not thereafter correct the interpretation by the enactment of new legislation.  By contrast, we apply here the established precept of statutory interpretation that when our Legislature enacts a statute including language that already has been subject to judicial interpretation, the Legislature intends the established interpretation of those words.

petition. This Court affirmed the circuit court's holding that the plaintiff was not an "aggrieved party" entitled to challenge the board's decision, rejecting plaintiff's argument that because it was entitled to notice under the former zoning legislation, it had standing to challenge the board's decision. *Id*. at 103. This Court also rejected the plaintiff's argument that it had standing because it was an adjoining property owner, stating:

> We see little reason for abandoning the general rule that third parties will be permitted to appeal to the courts as persons aggrieved if they can show that * * * their property will suffer some special damages as a result of the decision of the board complained of, which is not common to other property owners similarly situated. . . . If the board's decision does not pose a threat of unique harm to the neighbor, then the courts would be ill-served by a rule allowing his suit. [*Id*. at 103 n 1 (quotation marks and citations omitted).]

In *Village of Franklin*, the defendant city council approved a site plan for a residential and commercial development. The village and a property owner challenged the decision in the circuit court, but the circuit court granted summary disposition to the defendant after concluding that the plaintiffs were not aggrieved parties under the former zoning legislation. On appeal, this Court expressly rejected the argument of the plaintiff property owner that she had standing because she owned land that adjoined the proposed development, holding that the property owner "failed to allege or prove special damages." *Village of Franklin*, 101 Mich App at 557. This Court explained:

> In order for a party to have standing in court to attack the actions of a zoning board of appeals, the party must be an aggrieved party, and standing cannot be based solely on the fact that such party is a resident of the city. In the present case, the circuit court relied on [MCL 125.590], which authorizes an appeal to circuit court by a "party aggrieved" by a Board of Zoning Appeals decision. We agree with the circuit court's decision that the present plaintiffs lacked standing because they were not aggrieved parties. [*Id*. at 556-557 (citations omitted).]

Given the long and consistent interpretation of the phrase "aggrieved party" in Michigan zoning jurisprudence, we interpret the phrase "aggrieved party" in § 605 of the MZEA consistent with its historical meaning. Therefore, to demonstrate that one is an aggrieved party under MCL 125.3605, a party must "allege and prove that he [or she] has suffered some special damages not common to other property owners similarly situated." *Unger*, 65 Mich App at 617. Incidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved. See *id*.; *Joseph*, 5 Mich App at 571. Instead, there must be a unique harm, dissimilar from the impact that other similarly situated property owners may experience. See *Brink*, 81 Mich App at 103 n 1. Moreover, mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved, *Village of Franklin*, 101 Mich App at 557-558, as is the mere entitlement to notice. *Brink*, 81 Mich App at 102.

A review of the record in this case indicates that, contrary to the holding of the circuit court, appellees failed to demonstrate that they were aggrieved parties within the meaning of the

MZEA. Appellees argued before the circuit court that they were aggrieved because (1) they relied upon the 1996 variance denial concluding that Lot 6 was unbuildable, (2) they relied upon the zoning ordinance to be enforced as it is written, (3) they were entitled to receive notice of the public hearing before the ZBA as owners of real property within 300 feet of Lot 6, and (4) they would suffer aesthetic, ecological, practical, and other alleged harms from the grant of the zoning variance. These alleged injuries, however, do not establish appellees as aggrieved parties under MCL 125.3605. Aesthetic, ecological, and practical harms are insufficient to show "special damages not common to other property owners similarly situated." *Unger*, 65 Mich App at 617. Similarly, appellees' expectations that the 1998 zoning ordinance would be interpreted in the same manner as the 1981 zoning ordinance, or that the ZBA would arrive at the same decision as the 1996 denial of an altogether different variance request, were not sufficient to show special damages. Because appellees failed to show that they suffered a unique harm different from similarly situated community members, they failed to establish that they are parties aggrieved by the decision of the ZBA.

Although the circuit court noted that septic systems and setback requirements specifically affected the property of neighboring landowners, there is no evidence that such damages are more than speculation or anticipation of future harm. Presumably, appellant would not be permitted to install a septic system that did not pass all of the requisite county health codes and building requirements. Thus, assuming that appellant obtained the requisite permits, there is nothing to support the conclusion that adjoining landowners would suffer the harm they anticipate.

The circuit court also held that appellees had standing to challenge the issuance of the nonuse variance because they owned real property within 300 feet of Lot 6 and therefore were entitled to notice under the MZEA. MCL 125.3103 provides in relevant part:

> (1) Except as otherwise provided under this act, if a local unit of government conducts a public hearing required under this act, the local unit of government shall publish notice of the hearing in a newspaper of general circulation in the local unit of government not less than 15 days before the date of the hearing.

> (2) Notice required under this act shall be given as provided under subsection (3) to the owners of property that is the subject of the request. Notice shall also be given as provided under subsection (3) to all persons to whom real property is assessed within 300 feet of the property that is the subject of the request and to the occupants of all structures within 300 feet of the subject property regardless of whether the property or structure is located in the zoning jurisdiction.

This statutory notice provision does not confer the status of aggrieved party on appellees. In *Brink*, this Court addressed and rejected this argument, explaining:

> Plaintiff, as an owner of land located within 300 feet of defendant Brink's premises, was entitled to and did receive notice of the proceedings before the Zoning Board of Appeals . . . .

However, plaintiff argues that [notice under] § 11 not only made plaintiff a proper party to any appeal taken by an aggrieved party, but also gave plaintiff itself standing to institute such an appeal, regardless of whether it was an aggrieved party.

Plaintiff cites no authority for this construction of the statute, and we do not find it persuasive. The "aggrieved party" requirement is a standard limitation in state zoning acts providing for review of zoning board of appeals decisions. This requirement has repeatedly been recognized and applied in the decisions of this Court. Had the Legislature meant to unshoulder this burden from parties in plaintiff's status it could have done so in simple terms. However, section 11 does not speak in terms of standing to seek review, but only of notice and a right to appear . . . . We do not read this language as broadening the class of parties privileged to begin such reviews. [*Brink*, 81 Mich App at 102 (citations omitted).]

As in *Brink*, appellees' entitlement to notice under MCL 125.3103 of the ZBA proceedings does not create "aggrieved party" status for appellees under MCL 125.3105. Nothing in the MZEA or in Michigan's zoning jurisprudence supports reading "aggrieved party" status into the MZEA's notice requirement. Indeed, this reading of the notice provision runs contrary to this Court's decisions establishing that mere ownership of adjoining property is insufficient to establish a property owner as an aggrieved party. Accordingly, the circuit court erred in holding that appellees achieved status as "aggrieved parties" merely because they were entitled to notice under MCL 125.3103.

Appellees point to *Brown v East Lansing Zoning Bd of Appeals*, 109 Mich App 688; 311 NW2d 828 (1981), to support their "aggrieved" status, but a review of that case indicates that this argument is misguided. In *Brown*, the defendant East Lansing Zoning Board of Appeals granted the intervenor a variance to permit the construction of a duplex. The plaintiffs were neighboring landowners who objected to the construction of the duplex, and they appealed the decision to the circuit court. *Id*. at 690-691. The circuit court held that the plaintiffs were not parties aggrieved by the decision of the board. *Id*. at 693. On appeal, this Court held that the neighboring landowners had standing to appeal the defendant's grant of the variance, explaining:

In [*Village of Franklin*, 101 Mich App at 556] this Court expressly relied on the fact that the appeal in that case was taken under [MCL 125.590], which requires a party to be "aggrieved" in order to have standing to appeal. In the present case, on the other hand, plaintiffs' appeal was taken under [MCL 125.585(6)], *which requires only that a person have "an interest affected by the zoning ordinance.*" The fact that plaintiffs have an interest affected by defendant's decision to grant the variance is manifest in their active opposition to the variance and their participation in the different hearings. [*Id*. at 699 (emphasis added).]

*Brown* is unpersuasive here because it involved the application of a more permissive threshold for standing under a previous enabling statute that a person "have an interest affected by the zoning ordinance." In contrast, the cases discussed above—*Unger*, 65 Mich App at 616;

-10-

*Brink*, 81 Mich App at 99; and *Village of Franklin*, 101 Mich App at 556—applied the "aggrieved person" threshold. Because the MZEA incorporated the "aggrieved person" threshold, see MCL 125.3605, we align our decision interpreting that language in the MZEA with the body of caselaw interpreting the "aggrieved person" threshold.

We next address appellees' contention that appellant waived the issue of standing by not raising it before the ZBA. Appellees argue that they appeared before the ZBA together with counsel and presented their arguments in that forum without appellant challenging their right to do so, and that appellant therefore waived any challenge to appellees' standing to pursue the appeal in the circuit court. Appellees rely upon this Court's opinion in *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 695 NW2d 508 (2005), and also in *Frankling v Van Buren Charter Twp*, unpublished per curiam opinion of the Court of Appeals, issued July 15, 2008 (Docket No. 271228). We conclude that appellees' reliance upon these cases is misplaced.

*Glen Lake* does not involve an appeal from a zoning decision of a local unit of government. Rather, *Glen Lake* involved a dispute under the inland lake levels part of Michigan's Natural Resources and Environmental Protection Act, MCL 324.30701. In that case, the Glen Lake Association, which earlier had been ordered by the trial court to operate the dam in question so as to maintain the water level of the lake at the ordered level, completely shut off the water flow into the Crystal River while constructing a new dam. A group of riparian property owners and a canoe livery on the river filed suit against the Glen Lake Association. After the trial court entered its order modifying the established lake level, the Association appealed to this Court arguing that the trial court lacked subject matter jurisdiction because the property owners did not have standing to bring the action. This Court identified that the Association's challenge was actually a challenge to the property owners' legal capacity to sue, and that as such, the Association should have raised the challenge in its first responsive pleading in the trial court, but instead had acquiesced in the proceedings, then later attempted to assert the challenge. This Court concluded that because the Association had not raised the legal capacity to sue challenge in its first responsive pleading, it had waived the issue. The *Glen Lake* decision was thereafter cited by this Court in its unpublished opinion in *Frankling* for the proposition that "[c]hallenges to standing are waived if not timely raised." *Id*. at 3, citing *Glen Lake*, 264 Mich App at 528.

We find these cases inapplicable here. Initially, we note that neither of these cases involved application of the MZEA nor the same language used in the MZEA. *Glen Lake* did not involve an appeal from a zoning decision of a local unit of government. *Frankling*[5] involved application of MCL 125.293a, a provision of the now-repealed township zoning act, which provided that "a person having an interest affected by the zoning ordinance may appeal" a decision of the board of zoning appeals to the circuit court. Neither *Glen Lake* nor *Frankling*

---

[5] We also note that *Frankling* is unpublished, and this Court's unpublished opinions are not binding upon this Court. MCR 7.215(C); *Paris Meadows*, *LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

persuade us that appellant in this case was obligated to challenge appellees' right to appeal to the circuit court *before* appellees actually appealed.

Appellees argue that appellant should have challenged their standing when they appeared before the ZBA. Appellant, however, is not challenging the appellees' right to appear at the public hearing before the ZBA and make public comments; rather, appellant is challenging the ability of appellees to thereafter appeal the decision of the ZBA to the circuit court. The ZBA was not the appropriate forum to address whether appellees were empowered to appeal the ZBA's decision as aggrieved parties. The question who may seek review of the ZBA decision before the circuit court is a question for initial determination by the circuit court, not by the ZBA. Moreover, at the time of the proceedings before the ZBA, the ZBA had not yet granted the variance and thus any challenge to appellees' ability to appeal that future decision would have been premature.[6] So, although appellees had a right to participate in the ZBA's public hearing, the issue whether appellees were parties "aggrieved by the decision" of the ZBA under the MZEA with the right to appeal the decision of the ZBA to the circuit court was a question properly raised for the first time before the circuit court. Indeed, it could not have been raised any earlier.

Lastly, we address appellees' reliance on our Supreme Court's opinion in *Lansing Schools Educ Ass'n v Lansing Bd of Educ*, 487 Mich 349; 792 NW2d 686 (2010). Appellees argue that based upon *Lansing Schools*, they have standing to challenge the decision of the ZBA in this case. We disagree. *Lansing Schools* involved the question whether the teachers in that case had standing to sue the school board for refusing to expel certain students who allegedly had physically assaulted the teachers. In that case, our Supreme Court stated:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. . . . Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if a statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*. at 372 (footnotes omitted).]

*Lansing Schools*[7] is inapplicable here. As discussed, this case involves not general notions of standing, that is, a plaintiff's right to invoke the power of the trial court regarding a

---

[6] And while before the ZBA, appellant could not possibly know of, and object to, the entire universe of possible parties who might in the future appeal a future decision of the ZBA.

[7] It has been notably observed that in *Lansing Schools*, our Supreme Court overruled the previous understanding of standing in this state, establishing in its place a " 'limited, prudential doctrine' that uncoupled standing from its constitutional moorings," thereby creating a standing doctrine that should itself be overruled. *Ader v Delta College Bd of Trustees*, 493 Mich 887; 822

claimed injury by another party, but instead application of a specific statutory provision of the MZEA that permits appellate review of a local unit of government's zoning decision when review is sought by a "party aggrieved" by the decision of that local tribunal. That is, the inquiry whether there is a "legal cause of action" that would justify finding that a plaintiff has standing to initiate an action, see *id.* at 372, is not relevant where, as here, our inquiry is whether a party is empowered to seek appellate review under a particular statutory scheme.

But we note that even if the *Lansing Schools* analysis were applicable here, appellees would nonetheless lack standing because, just as they have not demonstrated that they are "aggrieved" within the meaning of the MZEA, they have not demonstrated "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large," under *Lansing Schools*. See *id.* at 372. In either scenario, a party must establish that they have special damages different from those of others within the community. Appellees have not done so, asserting only the complaints of anticipated inconvenience and aesthetic disappointment that any member of the community might assert.

But we reiterate that the inquiry here involves not an application of concepts of standing generally, but a specific assessment of whether, under the MZEA, appellees have established their status as aggrieved parties empowered to challenge a final decision of the ZBA. We conclude that appellees are not parties "aggrieved" under MCL 125.3605, having failed to demonstrate special damages different from those of others within the community. Accordingly, appellees did not have the ability to invoke the jurisdiction of the circuit court, and the circuit court erred in denying the township's and appellant's motion to dismiss the circuit court action. In light of our conclusion that appellees were not properly able to invoke the jurisdiction of the circuit court, it is unnecessary to address appellant's additional contentions of error in the circuit court's ruling.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Joel P. Hoekstra

---

NW2d 221 (2012) (MARKMAN, J., dissenting). As Justice Corrigan in her dissent in *Lansing Schools* observed, the standard for standing established in that case is a "broad and amorphous principle that promises to be nearly impossible to apply in a society that operates under the rule of law." *Lansing Schools,* 487 Mich at 417 (CORRIGAN, J., dissenting).