*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRANDVIEW BEACH ASSOCIATION,

      Appellee,

UNPUBLISHED
March 18, 2021

v

COUNTY OF CHEBOYGAN and CHEBOYGAN
COUNTY PLANNING COMMISSION,

      Appellees,

and

HERITAGE COVE FARM, INC., LAWRENCE P.
HANSON, ELIZABETH A. HANSON, and LIB
LIB, LLC,

      Appellants.

No. 350352
Cheboygan Circuit Court
LC No. 18-008723-AA

Before: BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

PER CURIAM.

Appellants Heritage Cove Farm, Inc., Lawrence P. Hanson, Elizabeth A. Hanson, and Lib Lib, LLC (collectively, the Hansons)[1] appeal by leave granted[2] the circuit court's opinion and order reversing the Cheboygan County Planning Commission's decision granting final approval of a special use permit to the Hansons. For the reasons set forth in this opinion, we reverse the order of the circuit court and remand for reinstatement of the decision of the planning commission.

---

[1] It appears that throughout these proceedings, the Hansons have acted on behalf of the business entities. For the sake of simplicity, we will refer to these parties collectively as "the Hansons."

[2] *Grandview Beach Ass'n v Cheboygan Co*, unpublished order of the Court of Appeals, entered February 3, 2020 (Docket No. 350352).

# I. BACKGROUND

The facts underlying this case revolve around a protracted dispute over a project proposed by the Hansons to create a therapeutic farm community for people with mental illnesses. This Court has previously considered appellee Grandview Beach Association's (the Association) objections to this project. See *Grandview Beach Ass'n v Cheboygan Co*, unpublished per curiam opinion of the Court of Appeals, issued January 16, 2018 (Docket Nos. 335159 and 335206). In our prior opinion, we summarized the relevant factual background as follows:

> [The Hansons] requested a special use permit and site plan approval for a proposed development known as Heritage Cove Farm in April 2015. [The Hansons] presented the Farm as a "therapeutic farm community" for residents with mental illnesses that "substantially affect" one or more major life activity. For a fee, the Farm will provide room and board as well as farming opportunities and other activities in a community setting that is designed to enable residents to "work toward healing and living independently." The Farm will have 24-hour on-site staffing to provide medication reminders, treatment plans with onsite staff, as well as individual and group therapy. It is expected that residents will remain on the farm for 4 to 12 months. The proposed site plan for the property includes cabins to house residents and staff, a garden, a greenhouse, space for animals, a workshop and storage area, and a community building with dining facilities.

> The Farm property consists of 33 acres and it spans two zoning districts, M-AF (Agricultural and Forestry Management), and P-LS (Lake and Stream Protection). Discussion and deliberation took place regarding the proposed development, both between the Commission's staff and [the Hansons], and in the form of voluminous public comments. The Commission held a public hearing on November 4, 2015, and deliberations on December 2, 2015, December 16, 2015, and January 6, 2015. After reviewing exhibits, staff reports, and correspondence, the Commission approved, with conditions, [the Hansons'] application for a special use permit for the Farm as a convalescent home in the M-AF zoning district, and as cabin colonies and a restaurant in the P-LS zoning district. [The Association] appealed the Commission's decision to the circuit court, which affirmed that decision. [*Id*. at 1-2.]

The Association appealed to this Court, and we affirmed. *Id*. at 1. As relevant to our current discussion, in our prior opinion, we affirmed the Commission's decision to grant the special use permit conditioned on the Hansons being able to demonstrate through the results of a " 'police, fire, and ambulance impact study' " that the standard of Cheboygan Zoning Ordinance § 18.7.e was met. *Id*. at 8-10. As we explained:

> Cheboygan Zoning Ordinance § 18.7.e requires that, before approving a special use permit, the Commission must find that a proposed special land use "will not place demands on fire, police, or other public resources in excess of current capacity nor increase hazards from fire or other dangers to the subject property or adjacent properties." With regard to this requirement, the Commission recognized that there were no reports from law enforcement or others regarding the burden that

would be placed on emergency support personnel. However, as discussed by the Commission, there was testimony from a retired police officer regarding the likelihood of an increase in safety hazards and emergency room visits, a statement from a clinical psychologist espousing concern over possible safety issues, and evidence of a general study relating to the proportion of emergency room visits that are made by psychiatric patients. On this record, the Commission expressly found that [the Hansons] had not made the showing required under 18.7.e, finding that the record "will *not* support standard 18.7.e" (emphasis added).

Despite this failing, the Commission conditionally granted a special use permit to [the Hansons]. The Commission determined that "[b]ecause the sole reason for not meeting standard 18.7.e is because of the mental disability of the residents, a modification allowing this use is reasonable and necessary under [the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., and the Fair Housing Act (FHA), 42 USC 3601 *et seq*.]." In particular, in an effort to accommodate the residents' mental disabilities, the Commission waived the requirement under 18.7.e as an initial matter and instead conditioned the special use permit on the requirement that [the Hansons] request comment on the safety issues from the police department and sheriff's department. Additionally, in its findings, the Commission expressly stated that approval for the special use permit "should be conditioned on the results of a police, fire, and ambulance impact study to determine whether this standard [under § 18.7.e] has been met by" [the Hansons]. The Commission also noted that even if there was some increased burden on law enforcement, it would not necessarily preclude the Commission from granting the special use permit because [the Farm] [was] entitled to reasonable accommodation.

\* \* \*

. . . While the Commission indicated that it was making an accommodation in granting the special use permit, this accommodation amounted to waiving Cheboygan Zoning Ordinance § 18.7.e's requirement that the person applying for a special use permit demonstrate beforehand that the proposed use would "not place demands on fire, police, or other public resources in excess of current capacity." The Commission instead decided to accommodate [the Farm] by conditioning the special use permit on the results of a police, fire, and ambulance impact study. The Commission also noted that even if there was some increased burden on law enforcement, it would not merit denying the special use permit. The Commission otherwise determined that the Farm met the requirements for granting a special use permit. [*Id*. at 8-9 (third, fourth, and sixth alterations in original).]

In reaching our decision to affirm, we reasoned in pertinent part as follows:

Again, it is important to keep in mind the nature of the accommodation that the Commission allowed. The Commission conditioned the Farm's special use permit on the results of a police, fire, and ambulance impact study. The actual modification was allowing [the Hansons] to request police comment after the fact and to demonstrate the requirements of § 18.7.e were met through a study rather

-3-

than requiring them to demonstrate that their demands would not exceed service capacity as part of their application. Further, the Commission found that even if there was some increased burden on law enforcement, it would not necessarily merit denying the special use permit. We note that Cheboygan County Zoning Ordinance § 18.7.e requires a finding that the increased burden will not exceed "current capacity." This is not the same as requiring the applicant to demonstrate no increased burden at all. Thus, at this point in time, it is not apparent that [the Hansons] will not satisfy § 18.7.e; and, even if there is some increase in demand beyond "current capacity," there is no basis in the record to overturn the Commission's finding that some increased burden would not necessarily be disproportionate to accommodating the residents' disabilities.[8]

_____

[8] The record before us does not include the results of the impact study. It is unclear whether the study has been conducted yet or if [the Hansons] have requested comment on the safety issue from the police and sheriff's departments. Further, while the Commission indicated that [the Farm] should be accommodated even if there is an increased burden on law enforcement, considering the Commission's decision as a whole, we do not read this as suggesting that *any* increase, no matter how great or unreasonable the resulting cost should be accommodated. Instead, at this juncture, the Commission has merely given conditional approval for the special use permit and, until the study is completed, the law enforcement issue remains unresolved. When the impact study has been completed and comments from law enforcement elicited, the Commission will have to consider whether there will be an increased burden beyond the "current capacity" under § 18.7.e and whether such an increase, if any, must be allowed as a reasonable accommodation. At that time, the Commission's decision on this issue may be challenged. [*Id.* at 10.]

Following the issuance of our opinion affirming the circuit court, the Commission subsequently held additional public hearings on June 6, 2018, and September 5, 2018 relative to the special use permit. At the September 5 hearing, the Commission found that § 18.7.e had been satisfied, stating its findings as follows:

The Planning Commission finds that based upon the letters from law enforcement, emergency services, and the Tuscarora Township Volunteer Fire Chief, as well as the study authored by Paul M. LeBlanc, of PLB Planning Group, LLC, being a certified planner and other exhibits, that the proposed special land use will not place demands on fire, police or other public resources in excess of current capacity or increase hazards from fire or other dangers either to the Heritage Cove Farm property or any adjacent properties. The Planning Commission further finds that the letters from the Tuscarora Township Fire Department, the Cheboygan County Sheriff's Department and the PLB Planning Group study clearly indicate that there would not be any increase in demand with respect to fire and police services in excess of current capacity regardless of whether the agencies are servicing the Heritage Cove Farm property or other adjacent properties within the township. The Planning Commission further finds that the amount of services provided by police and fire within Tuscarora Township and within the vicinity of Heritage Cove Farm has remained the same for several years while having to

provide services to a declining population both within Tuscarora Township and Cheboygan County, thus negating any increase whatsoever of any potential hazards, including any criminal activity which may or may not occur within the township by adding Heritage Cove Farm operations as outlined in page 3 of the PLB Planning Group report to address whether additional evidence that had been provided established that § 18.7.e had been satisfied.

The Commission adopted these findings, concluding that § 18.7.e had been met. The Commission also included as conditions that the Farm maintain 24-hour-per-day security monitoring with security cameras on each cabin and that a written final security plan be provided to the planning director once the security plan was finalized.

The Association filed a claim of appeal in the circuit court. The Hansons were permitted to intervene by stipulation of the Association, the County, and the Commission. The circuit court reversed the decision of the Commission, concluding that a more detailed impact study specifically addressing the diagnoses, treatment plans, and "associated safety concerns" of the Farm's residents was necessary and that the Commission's decision was thus not supported by competent, material, and substantial evidence.

The Hansons filed an application for leave to appeal the circuit court's decision. As previously stated, this Court granted leave to appeal.

## II. STANDARD OF REVIEW

Zoning decisions are appealable by right to the circuit court. This Court in turn reviews the circuit court's decision de novo, "because the interpretation of the pertinent law and its application to the facts at hand present questions of law." This includes the circuit court's decision regarding whether its appellate jurisdiction has been properly invoked. [*Ansell v Delta Co Planning Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345993) (citations omitted); slip op at 3.]

## III. ANALYSIS

In their appeal, the Hansons first argue that the circuit court lacked jurisdiction over the Association's appeal to the circuit court because the Association was not an "aggrieved party" and therefore had no right to appeal the Commission's decision to the circuit court under MCR 7.122. The Hansons, along with the County and the Commission, raised this argument before the circuit court. The circuit court rejected this argument in cursory fashion, stating:

The Court rejects the Appellees' [i.e., the County and the Commission,] and intervening Appellees' [i.e., the Hansons] collateral arguments the [Association] lacks standing and the Court is limited by the law of the case and Federal Law from requiring and considering evidence of any safety concerns regarding mentally disabled persons. The Court adopts [the Association's] arguments disputing these claims.

In the circuit court, the Association claimed that the zoning decision would cause its members to suffer special damages not common to other property owners. The Association argued

that as a consequence of these "special damages," the Association had established themselves as an aggrieved party. The Association listed several alleged special injuries, predicated on the proximity of the Farm to the other properties within the Association, and that essentially consisted of alleged adverse effects on the residential character of the surrounding properties, the safety and security of the area, the use and enjoyment of Association members' property, property values, the local environment and wildlife, storm-water-discharge and water-treatment systems, traffic flow, and the degree of noise and light in the area.

The authority of local units of government to regulate land development and use through zoning derives from the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*. *Olsen v Chikaming Twp*, 325 Mich App 170, 179; 924 NW2d 889 (2018). Judicial review of a local government's zoning decisions is also provided for by the MZEA. *Id*. Specifically, MCL 125.3605 provides as follows:

> The decision of the zoning board of appeals shall be final. A party *aggrieved* by the decision may appeal to the circuit court for the county in which the property is located as provided under section 606. [Emphasis added.]

This Court explained in *Olsen* that there is a difference between "standing," which "generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury," and seeking *appellate review* by the circuit court of a zoning decision. *Olsen*, 325 Mich App at 180. "[U]nder the MZEA, a party seeking relief from a decision of a ZBA is not required to demonstrate 'standing' but instead must demonstrate to the circuit court acting in an appellate context that he or she is an 'aggrieved' party." *Id*. at 180-181, citing MCL 125.3605.

Interpreting the meaning of the term "party aggrieved" for purposes of being empowered to seek judicial review in the circuit court of a ZBA decision under the MZEA, this Court held in *Olsen*:

> Therefore, to demonstrate that one is an aggrieved party under MCL 125.3605, a party must "allege and prove that he [or she] has suffered some special damages not common to other property owners similarly situated[.]" Incidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved. Instead, there must be a unique harm, dissimilar from the effect that other similarly situated property owners may experience. Moreover, mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved, as is the mere entitlement to notice. [*Olsen*, 325 Mich App at 185 (alterations in original; citations omitted).]

The instant case does not involve an appeal from a zoning board of appeals, but instead involves an appeal from the decision of the Cheboygan County Planning Commission to grant a special use permit under the Cheboygan Zoning Ordinance. Such appeals are controlled by MCR 7.122, which provides in relevant part that "[t]his rule governs appeals to the circuit court from a determination under a zoning ordinance by any officer, agency, board, *commission*, or zoning board of appeals" and that "[u]nless this rule provides otherwise, MCR 7.101 through MCR 7.115 apply." 7.122(A)(1) (emphasis added); see also *Ansell*, ___ Mich App at ___; slip op at 3. Under

-6-

MCR 7.103(A)(3), "[t]he circuit court has jurisdiction of an appeal of right filed by an aggrieved party from . . . a final order or decision of an agency from which an appeal of right to the circuit court is provided by law." See also *Ansell*, ___ Mich App at ___; slip op at 3. "In an appeal from a final determination under a zoning ordinance where no right of appeal to a zoning board of appeals exists, the court shall determine whether the decision was authorized by law and the findings were supported by competent, material, and substantial evidence on the whole record." MCR 7.122(G)(2).

In *Ansell*, this Court held that the aggrieved party standard applicable to appeals from decisions of a zoning board of appeals also applied to appeals from zoning decisions where review by a zoning board of appeals was not available. *Ansell*, ___ Mich App at ___; slip op at 3. This Court in *Ansell* specifically applied the aggrieved party standard to the question whether the appellate jurisdiction of the circuit court had properly been invoked in an appeal from a county planning commission's zoning decision. *Id*. at ___; slip op at 2-3. "Both appeals from a township board and municipal zoning commission planning board are entitled to the same review." *Id*. at ___; slip op at 4. We held, in short, that "only an aggrieved party may appeal the final determination under a zoning ordinance." *Id*; see also *Connell v Lima Twp*, ___ Mich App ___; ___NW2d ___(2021), slip op at 14 (explaining that, when appealing an administrative decision of a zoning board (e.g., the grant of a special-use permit), "the appellant must be an aggrieved party, as opposed to a legislative decision, which does not require that the appellant be an aggrieved party)."

Accordingly, in the present case, the Association was only entitled to appeal the Commission's zoning decision to the circuit court if the Association was an "aggrieved" party. *Id*.

To this point, the Association argues that the issue of whether it was an aggrieved party has been waived because this Court has already decided an appeal involving this matter and the issue was not raised until the most recent proceedings in the circuit court that occurred after this Court's prior opinion. The Association views the entire dispute involving the Hansons' special use permit as one continuous judicial proceeding and further contends that this Court remanded the case to the Commission in our prior opinion involving this matter. The Association misunderstands the current procedural posture of this case as well as our disposition of the matter in the prior appeal.

We begin by noting that we did not order a remand in our prior opinion. We simply affirmed in all respects the circuit court's decision that had affirmed the Commission's decision to grant the special use permit with conditions to the Hansons. *Grandview Beach*, unpub op at 1-2, 12. As specifically relevant to our current discussion, we affirmed with respect to the Commission's decision to condition the grant of the special use permit on the results of a police, fire, and ambulance impact study to determine whether § 18.7.e of the zoning ordinance could be satisfied with or without a reasonable accommodation. *Grandview Beach*, unpub op at 8-10, 12. Although we acknowledged that further proceedings before the Commission were necessary in order to resolve this particular issue, we did not retain jurisdiction or otherwise order a remand. See *id*. at 9-10, 10 n 8, 12. It is clear from our opinion that we resolved the issues that had been presented to us on appeal, terminated our jurisdiction over the matter, and allowed the matter to proceed to run its natural course that no longer involved this Court but may involve public hearings before the Commission.

-7-

Furthermore, the Commission is not a court and was not acting as a tribunal in holding public hearings on the special use permit and rendering its decision related to the special use permit. See *Ansell*, ___ Mich App at ___ n 1; slip op at 2 n 1 ("Accordingly, the appeal to the circuit court was not taken from a court or tribunal because the planning commission is not a court and did not act as a tribunal in issuing the permits in question."). The right of the Association and its members to participate in the public hearings before the Commission is distinct from the question whether the Association had a right to appeal this particular zoning decision to the circuit court. *Olsen*, 325 Mich App at 191-192. Whether the Association had a right to participate and make its arguments in the public hearings before the Commission is not in dispute in this case. See *id*. at 192 (noting the general right of neighboring property owners to participate in public hearings regarding zoning decisions).

However, the question whether a party has been "aggrieved" by a zoning decision such that the party has a right to seek appellate review in the circuit court of that zoning decision—which is the question in dispute in the present case—is "a question for initial determination by the circuit court" and is timely raised if raised for the first time in the circuit court. *Id*. at 191-192. As we have already explained, a party seeking to challenge a final zoning decision made by a zoning board of appeals or planning commission through an appeal to the circuit court must properly invoke the circuit court's appellate jurisdiction by demonstrating that it is an aggrieved party. *Olsen*, 325 Mich App at 180-181; *Ansell*, ___ Mich App at ___; slip op at 2-4. In discussing the general requirements for establishing that a party is "aggrieved," in *Olsen* we stated:

> An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. *The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case*. [*Olsen*, 325 Mich App at 181 (quotation marks and citation omitted) (emphasis added).]

Thus, the pertinent inquiry is whether the party appealing a final zoning decision to the circuit court was aggrieved *by that particular decision*; the appeal is specific to the final zoning determination at issue. *Id*.; see also MCL 125.3605 (providing a right to appeal in the circuit court to a "party aggrieved by the decision" of the zoning board of appeals); MCR 7.122(A)(1) ("This rule governs appeals to the circuit court from a determination under a zoning ordinance by any officer, agency, board, commission, or zoning board of appeals . . . ."). In this case, the Association appealed the Commission's decision that decided whether the Hansons had fulfilled the condition of satisfying § 18.7.e of the zoning ordinance. In concluding that the Hansons had fulfilled § 18.7.e, the Commission found that the "proposed special land use will not place demands on fire, police, or other public resources in excess of current capacity nor increase hazards from fire or other dangers to the subject property or adjacent properties." We acknowledged in our previous opinion that further proceedings would be required before the Commission on this issue, see *Grandview Beach*, unpub op at 10 n 8, and the Commission's subsequent decision that is now at issue in the present appeal was narrowly focused on this precise issue.

It was from this decision that the Association appealed to the circuit court in the case now before us, which was a separate and distinct decision from the Commission's earlier decision

granting the special use permit.[3] The Association appealed that earlier decision, which was affirmed by both the circuit court and then this Court. *Grandview Beach*, unpub op at 1. However, the fact that the Association appealed an earlier, separate planning commission decision does not establish that it is an aggrieved party for any subsequent final zoning decision that might happen to involve the same property or special use permit. Although we indicated in our previous opinion that the Commission's decision regarding § 18.7.e was subject to being challenged, see *Grandview Beach*, unpub op at 10 n 8, we did not suggest that such a challenge could be brought by a party that was not aggrieved by the decision. Moreover, the Association's second appeal to the circuit court has a different file number than the first, further demonstrating that these were two separate circuit court appeals.

When the Association appealed the Commission's most recent zoning decision regarding § 18.7.e to the circuit court, the Hansons argued in the circuit court that the Association was not an aggrieved party with a right to appeal that zoning decision. The Hansons could not have raised this particular challenge any earlier because they could not argue that the Association had not been aggrieved by a decision that had not yet been made; thus, they timely raised this challenge and did not waive it. *Olsen*, 325 Mich App at 191-192 ("Moreover, at the time of the proceedings before the ZBA, the ZBA had not yet granted the variance and thus any challenge to appellees' ability to appeal that future decision would have been premature. So, although appellees had a right to participate in the ZBA's public hearing, the issue whether appellees were parties "aggrieved by the decision" of the ZBA under the MZEA with the right to appeal the decision of the ZBA in the circuit court was a question properly raised for the first time before the circuit court. Indeed, it could not have been raised any earlier."). Accordingly, we conclude that the Hansons did not waive their right to challenge the Association's status as an aggrieved party in this appeal by declining to raise such a challenge in the previous, separate circuit court appeal from a different zoning decision. The rationale behind this conclusion is obvious; the issue of whether the circuit court's jurisdiction was properly invoked in the first appeal is irrelevant to whether it was properly invoked in this appeal.

The issue then becomes whether the Association was aggrieved by the zoning decision it was appealing. The Association maintains that it is an aggrieved party and relies on essentially the same claims of special damages in its appellate brief that it raised in the circuit court. The Association maintains that the Commission's decision to grant the special use permit for the Farm will cause special damages to the Association's members given that the property on which the Farm will be located is surrounded by properties owned by members of the Association, and the Association further asserts that the Farm will adversely affect the residential character of the surrounding properties, the use and enjoyment of Association members' property, property values in the area, the local environment and wildlife, storm-water-discharge and water-treatment systems, traffic flow, the degree of noise and light in the area, and the safety and security of the area due to the "treatment of patients who suffer from major mental illness."

---

[3] As we discussed in our previous opinion, there were other conditions as well. *Grandview Beach*, unpub op at 2, 4. However, those conditions are not at issue at this juncture.

Of these claims, all but the last are irrelevant to the question before us because none of those claimed damages are directly implicated by the decision appealed, which focused on the condition requiring a police, fire, and ambulance impact study relative to zoning ordinance § 18.7.e. Moreover, even if these other concerns were relevant, they do not suffice to establish special damages or unique harm dissimilar to the effects on other similarly situated property owners because they are claims relying on mere ownership of nearby parcels of land and "[i]ncidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes" that are "insufficient to show that a party is aggrieved." *Olsen*, 325 Mich App at 185. Thus, the Association's reliance on these claims does not establish that they were aggrieved by the zoning decision appealed in this case.[4]

With respect to the Association's last claim—that the safety and security of the area will be adversely affected because of the "treatment of patients who suffer from major mental illness"—the Association essentially argues that because the Farm will house residents with mental illnesses and because some people with mental illnesses commit various crimes, there is a risk to the safety and security of the surrounding property owners. However, the Association does not point to any evidence beyond generalized speculative fears and concerns related to people with certain mental illnesses in support of this assertion. Mere "speculation or anticipation of future harm" is insufficient to show the requisite unique harm necessary to establish that a party was aggrieved. *Olsen*, 325 Mich App at 186; see also *id*. at 181 ("[T]o be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case and not a mere possibility arising from some unknown and future contingency.") (quotation marks and citation omitted). Further, the party seeking appellate review of a zoning decision bears the burden to "demonstrate to the circuit court acting in an appellate context that he or she is an 'aggrieved' party." *Olsen*, 325 Mich App at 180-181, quoting MCL 125.3605.

The Association further faults the Hansons for not providing evidence to disprove the existence of the Association's speculative, if not outright bias-based fears, and the Association claims that this is the reason their asserted safety concerns appear speculative. However, our review of the Association's argument, coupled with the letters and statements of its members, leads us to conclude that the Association, and the circuit court, are essentially contending that by some means unknown and certainly not required by ordinance or statute, the Hansons are required to personally insure the safety of everyone in the community from any harm. This is not the proper standard to be employed when determining the issue of whether a party qualifies as an "aggrieved party." *Olsen*, 325 Mich App at 180-18.

Additionally, the Association's claims and the circuit court's decision arise from an imprudent and speculative conclusion that people who suffer from mental illness automatically present a safety risk to the well-being of others. As we explained in our prior opinion:

---

[4] To the extent that the condition of the public roads was discussed as part of the Commission's most recent zoning decision, the Association on appeal has only made a vague, speculative allegation of an increase in traffic, which is insufficient to demonstrate a unique harm even if it is considered relevant in this case. *Olsen*, 325 Mich App at 185.

Both the ADA and FHA apply to municipal zoning decisions. *Pacific Shores Props, LLC v Newport Beach*, 730 F3d 1142, 1157 (CA 9, 2013). Congress enacted the ADA in part "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 USC 12101(b)(1). The ADA recognizes that discrimination against people with disabilities persists in areas such as housing. 42 USC 12101(a)(3). Disabilities include mental impairments that substantially limit one or more major life activities. 42 USC 12102(1)(a). The FHA prohibits discrimination in housing on the basis of "handicap," 42 USC 3604(f)(1), which includes a mental impairment which substantially limits one or more major life activities, 42 USC 3602(h)(1). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 USC 3604(f)(3)(b). [*Grandview Beach*, unpub op at 8-9 (alteration in original).]

The Seventh Circuit Court of Appeals has recognized in the context of reasonable accommodations for housing that "prospective neighbors' public safety concerns could not 'be based on blanket stereotypes about disabled persons rather than particularized concerns about individual residents' " to support an argument that an accommodation in the form of a zoning variance or conditional use permit was unreasonable or would cause an undue hardship. *Valencia v City of Springfield, Ill*, 883 F3d 959, 970 (CA 7, 2018), quoting *Oconomowoc Residential Programs v City of Milwaukee*, 300 F3d 775, 786 (CA 7, 2002).[5] The failure to "demonstrate that the group home at issue was 'any more likely to generate calls to the police than other area residents' " suggests a lack of particularized concerns about individual residents. *Valencia*, 883 F3d at 970, quoting *Oconomowoc*, 300 F3d at 786. Furthermore, "[t]he amendments to the Fair Housing Act, contained in the FHAA [Fair Housing Amendments Act], specifically prohibit discrimination in housing on the basis of disability. *Oconomowoc*, 300 F3d at 782, citing 42 USC 3604. "The FHAA repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion." *Oconomowoc*, 300 F3d at 786 (quotation marks and citation omitted).

Here, we conclude that the circuit court based its decision on the Association's speculative fears and concerns which are based on nothing more than stereotypes and prejudices associated with mental illness. Such stereotypes and prejudices are not a proper basis for demonstrating that a party has been aggrieved by a zoning decision. See *id*.; *Valencia*, 883 F3d at 970.

When considering the context and speculative nature of the Association's claims, it becomes readily apparent that the Association failed to demonstrate that it was aggrieved party for purposes of appealing the zoning decision. Consequently, the Association did not have the right to invoke the circuit court's appellate jurisdiction and the circuit court erred by not dismissing the

---

[5] "Decisions from lower federal courts are not binding but may be considered persuasive." *Truel v City of Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010).

appeal. *Olsen*, 325 Mich App at 194. In light of this conclusion, we need not address the Hansons' remaining appellate arguments. *Id.*

We therefore reverse and remand this matter to the circuit court for entry of an order reinstating the Commission's decision and otherwise dismissing the Association's appeal for failure to demonstrate that it was aggrieved by the decision.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Appellants having prevailed in full, may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Jane M. Beckering
/s/ Brock A. Swartzle