*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OUR EGR HOMEOWNERS ALLIANCE,

        Appellant,

v

CITY OF EAST GRAND RAPIDS,

        Appellee,

and

SPECTRUM HEALTH HOSPITALS,

        Intervening Appellee.

UNPUBLISHED
June 11, 2020

No. 346413
Kent Circuit Court
LC No. 18-005163-AA

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Our EGR Homeowners Alliance appeals by leave granted the trial court's order dismissing its appeal of zoning decisions made by City Commission of the City of East Grand Rapids. On appeal, Alliance argues that the trial court erred by concluding that Alliance failed to establish special damages as a result of the City Commission's decision and that, therefore, Alliance was not an "aggrieved party." However, because Alliance alleged speculative future damages that could possibly arise from the underlying construction activity and not specifically from the City Commission's decision, we affirm the trial court's dismissal of Alliance's appeal.

This case arises out of a construction project at the Spectrum Health Blodgett Hospital in East Grand Rapids, Michigan. Spectrum sought to replace an existing parking structure on the campus's southwest corner with a smaller parking garage and a surface lot, and to construct a new parking structure at the campus's northwest corner in place of an existing surface lot. The project would require the City Commission to approve two variances to the City's zoning ordinance—a variance to the setback requirement for the surface parking lot along Sherman Street and a variance regarding the percentage of building coverage on the lot. The City Commission would also have to approve Spectrum's site plan for the project. The Planning Commission voted to allow the

variances and approved the amended site plan following a meeting. The City Commission, sitting in place of the zoning board of appeals (ZBA), approved the requested variances and the site plan. The City Commission's approval of the site plan was conditioned on several requirements, including Spectrum's agreement to monitor the foundations of nearby homes during construction.

Alliance, a nonprofit corporation including various owners and occupants of real properties located immediately adjacent to or surrounding Blodgett Hospital, along with additional individual nearby homeowners, appealed the City Commission's decision to approve the variances and site plan to the trial court. The City and Spectrum both filed motions to dismiss the appeal, arguing that the appellants were not "aggrieved parties" pursuant to MCL 125.3605. The trial court agreed and dismissed the appeal. Alliance then filed an application for leave to appeal the trial court's order in this Court, which we granted. *Our EGR Homeowners Alliance v East Grand Rapids*, unpublished order of the Court of Appeals, entered April 12, 2019 (Docket No. 346413).

Alliance's sole argument on appeal is that the trial court erred in dismissing its appeal of the City Commission's decision to approve the requested variances and site plan. We disagree.

This Court reviews "a circuit court's decision in an appeal from a decision of a zoning board of appeals . . . de novo to determine whether the circuit court applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial[-]evidence test to the [ZBA's] factual findings." *Olsen v Chikaming Twp*, 325 Mich App 170, 180; 924 NW2d 889 (2018) (quotation marks and citation omitted; second alteration in original.) This Court also reviews issues involving the construction of statutes and ordinances de novo. *Id.* Whether a party has standing is a legal question that is reviewed de novo. *Id.*

Although municipalities have no inherent power to regulate land use through zoning, the Michigan Legislature granted this authority through the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq. Id.* at 179. The Legislature combined three zoning acts into the MZEA, which grants local units of government authority to regulate land use and development through zoning. *Id.* "The MZEA also provides for judicial review of a local unit of government's zoning decisions." *Id.* MCL 125.3605 provides that "[t]he decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court for the county in which the property is located . . . ." MCL 125.3606(1) states:

> Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

This Court stated that for a party to demonstrate that it was "aggrieved" pursuant to MCL 125.3605,[1] "a party must 'allege and prove that he [or she] has suffered some special damages not common to other property owners similarly situated[.]' " *Olsen*, 325 Mich App at 185, citing *Unger v Forest Home Twp*, 65 Mich App 614, 617; 237 NW2d 582 (1975) (alterations in original). Moreover, this Court clarified that "[i]ncidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes are insufficient to show that a party is aggrieved." *Olsen*, 325 Mich App at 185. Rather, "there must be a unique harm, dissimilar from the effect that other similarly situated property owners may experience." *Id*. This Court determined that "mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved." *Id*.

At the outset, the City argues that Alliance admitted in its application for leave to appeal that it could not establish that it was an aggrieved party pursuant to the standard in *Olsen*. According to the City, this appeal must fail because *Olsen* is binding on this Court and Alliance has already admitted that it cannot meet the *Olsen* standard. It is true that Alliance argued that this Court improperly interpreted provisions of the MZEA in *Olsen*. However, Alliance also asserts that, regardless of the analysis in *Olsen,* Alliance "members plainly meet the statutory test" as aggrieved parties.

Nonetheless, Alliance has failed to establish that it is an aggrieved party to challenge the City Commission's decision. Alliance asserts that the City and Spectrum are estopped from challenging Alliance's status as an aggrieved party because they recognized that adjacent landowners faced a risk of structural damage to their homes during construction. See *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 480; 822 NW2d 239 (2012) (explaining that a party who successfully "asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding"). However, this is a mischaracterization of the record. Spectrum did agree to pay for the monitoring of nearby homes for structure damage. However, Spectrum never acknowledged that the project was likely to damage adjacent homes. Documents in the administrative record indicate that surrounding homes incurred damage from construction on the Blodgett campus in 2008. The likelihood of damage was discussed at a special meeting of the Planning Commission on February 6, 2018. Commissioner Brian Miller asked the senior vice president of facilities at Spectrum about vibrations from the construction and what would be different from the construction that occurred in 2008. He explained that construction techniques had changed. Spectrum would install temporary walls and propose a drilling process instead of driving pilings. Spectrum would improve communication with neighbors to alleviate anxiety and provide an independent survey of homes for damage that might occur. The vice president of Blodgett Hospital apologized for past issues. She stated that Spectrum would do everything possible to "make it right with this construction."

Moreover, the vice president of facilities showed a PowerPoint presentation at the March 20, 2018 Planning Commission meeting. One slide explained the site's soil condition and

---

[1] Although the City Commission was only sitting as a ZBA when it granted the variances and approved the site plan, the parties' arguments assume that MCL 125.3605 governs Alliance's right to appeal the City Commission's decisions.

vibration assessment. According to the slide, there are two types of soil at the Blodgett Hospital campus. Type A was classified as a suitable soil with low vibration transmission, and Type B was classified as poor soil with moderate vibration transmission. The slide stated that the 2008 construction occurred in mostly Type B soil, while the proposed construction would occur in mostly Type A soil. Monitoring during the 2008 construction confirmed that perimeter vibration levels were below the "appropriate threshold." The new construction was not expected to cause damage to hospital buildings or adjacent homes. However, Spectrum would offer home surveys to adjacent neighbors. As a result, Alliance's assertion that Spectrum and the City admitted that the construction was likely to cause damage to nearby homes is untrue. In fact, Spectrum presented the opposite, stating that the proposed construction would not damage adjacent homes.

This case is comparable to *Olsen*. Claims of aesthetic changes are insufficient to constitute special damages. See *Olsen*, 325 Mich App at 183 (stating that "a neighboring landowner alleging increased traffic volume, loss of aesthetic value, or general economic loss has not sufficiently alleged special damages to become an aggrieved party"). Further, like the septic systems at issue in *Olsen*, 325 Mich App at 186, vibrations from construction may affect nearby landowners. However, as was also the case in *Olsen*, Alliance has failed to show that its claim that the proposed construction will damage the foundations or driveways of nearby homes was "more than speculation or anticipation of future harm." *Id*. Alliance has not provided any evidence disputing Spectrum's claim that the construction will not cause harm to adjacent homes. Further, Alliance members submitted their own site plan proposals for Spectrum's consideration that would require construction. Alliance members also admitted that the existing parking garage required replacement. Alliance has not established, however, that Spectrum's requested variances and proposed site plan will result in more damage than their own proposed plans or the simple replacement of the existing parking garage. In addition, Spectrum was granted variances for parking setbacks and maximum lot coverage in 2008. Alliance has not established that damage (or additional damage) will occur as a result of the approval of the requested variances. See *id*. at 181 (stating that an appellant must demonstrate that it was aggrieved by the decision of the ZBA rather than the underlying facts of the case). Ultimately, Alliance has not presented any evidence that the City Commission's approval of the current variances and proposed site plan will cause the harm that it anticipates. See *id*. at 186-187. Because Alliance "failed to demonstrate special damages different from those of others within the community," it was not "aggrieved" pursuant to MCL 125.3605, and accordingly, "did not have the ability to invoke the jurisdiction of the circuit court . . . ." *Id*. at 194. As a result, the trial court properly dismissed Alliance's appeal of the City's Commission's approval of Spectrum's requested variances and site plan. See *id*.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-4-